**THE LAW OFFICE OF FENG LI**
**OCTAGON 10 OFFICE CENTER**
**1719 ROUTE 10 EAST, SUITE 318**
**PARSIPPANY, NJ 07054**
**T.: (973) 590-5110**
**F.: (973) 605-1166**
**ATTORNEY FOR PLAINTIFFS**

| | | |
|---|---|---|
| | : | |
| MARIA and ROLANDO GUTIERREZ | : | UNITED STATES DISTRICT COURT |
| | : | DISTRICT OF NEW JERSEY |
| Plaintiffs | : | |
| | : | Civil Action No: |
| vs. | : | |
| | : | |
| TD BANK, JOHN DOE 1-10 | : | <u>Civil Action</u> |
| | : | |
| Defendants | : | **COMPLAINT** |
| | : | |

## <u>CLASS ACTION COMPLAINT</u>

1. Plaintiffs, GUTIERREZ, et. al. ("Plaintiffs"), on behalf of themselves and a class of all others similarly situated, allege as follows:

## <u>INTRODUCTION</u>

2. Plaintiffs bring this action against Defendants for engaging in predatory lending practices and for violations of Federal and States laws, including but not limited to the federal Truth in Lending Act and Regulation Z, the federal Real Estate Settlement Procedures Act, the Home Ownership and Equity Protection Act, the federal Racketeer Influenced and Corrupt Organizations Act, the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, State and Federal High Cost Loan Statutes, the New Jersey Consumer Fraud Act, the New Jersey Lenders' Liability Law, the New Jersey RICO statutes, breach of contract, fraud and misrepresentation, negligence, and other causes of action arising from the mortgage

transactions entered into by Plaintiffs on their subject properties. Plaintiffs received mortgages with higher interest rates and/or terms that differed from those promised by Defendants. Defendants engaged in predatory lending tactics commonly referred to as "bait and switch" or "loan flipping," charged Plaintiffs fees and costs at closing for services not provided, failed to provide them with the required timely disclosures regarding these loans, and provided documents concerning the loans that contained false and misleading terms.

## PARTIES

**Plaintiffs**

3. Plaintiff(s) MARIA and ROLANDO GUTIERREZ is an individual(s) who resides at 3 Mountain Avenue, Summit, New Jersey 08701.

**Defendants**

**TD Bank**

4. Upon information and belief TD Bank is one of the mortgage loan originators in the United States.

5. TD Bank is named herein not only as the parent company of its acquired lenders' or subsidiaries' residential mortgage-lending operations, but because, on information and belief, TD Bank directed, participated in and/or influenced the setting and establishing of credit-related policies and underwriting guidelines and practices used by each of the other Defendants.

6. Upon information and belief, the following lenders are subsidiaries of TD Bank or TD Bank is the ultimate successor of the following lenders:

**John Doe 1-10**

7.  The allegations contained herein are against each of the Defendants. Defendants have collectively established policies for retail and wholesale access to their loan products.

8.  Further, each of Defendants directed, participated in and/or influenced the setting and establishing of credit-related policies, procedures, practices and underwriting guidelines used by each of the other Defendants.

## JURISDICTION

9.  This Court has personal jurisdiction over Defendants named herein because a substantial part of the wrongdoing alleged in this Complaint took place in the State of New Jersey. Defendants regularly do business in New Jersey.

10. This is an action for violations of 15 U.S.C. § 1601 *et seq.* (Truth in Lending Act, hereafter "TILA"), 42 U.S.C. § 3601 *et seq.* (Fair Housing Act), 15 U.S.C. § 1691 *et seq.* (Equal Credit Opportunity Act), and related state laws. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

## VENUE

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this district, as many of the underlying transactions complained of herein occurred in this district, and the Defendant conducts business within this district, occurring within the United States of America in the State of New Jersey.

## STATUE OF LIMITATIONS

12. Any applicable statutes of limitations have been tolled by Defendant's knowing and

active concealment, denial and/or misleading actions with respect to the facts alleged herein. The Class had been kept ignorant by Defendant's of any and all vital and material information essential to the terms of the parties agreement which lead to the pursuit of these claims alleged herein.

The Third Circuit permits equitable tolling of the statute of limitations for claims brought under TILA, RESPA, HOEPA, and the FDCPA. Smith v. EquipCredit Corporation, 2002 WL 32349873 (2002); Park v. M & T Bank Corp., 2010 WL 1032649 (2010). Because the statute of limitations is not a jurisdictional requirement, it may be tolled. Ramadan v. Chase Manhattan Corporation, 156 F.3d 499, 502 (3d Cir.1998). Therefore, in the event Plaintiffs' claims under TILA, RESPA, HOEPA, and the FDCPA fall outside the applicable statute of limitations period, Plaintiffs are entitled to the doctrine of equitable tolling due to circumstances of TILA violations committed by Defendants. Marangos v. Swett, 2008 WL 4508542 (2008).

In Poskin v. TD Banknorth, N.A., 687 F.Supp.2d 530 (2009), the Court held that for the equitable tolling doctrine of fraudulent concealment to apply to a case, Plaintiffs must prove (1) Defendants actively misled Plaintiffs respecting their claim; (2) Defendants prevented Plaintiffs from recognizing the validity of the claim within the limitations period; and (3) Plaintiffs used reasonable diligence in uncovering the relevant facts that form the basis of a claim. In re Cmty. Bank of N. Va., 467 F.Supp.2d 466, 478-79 (W.D.Pa.2006).

In the instant case, Plaintiffs' federal claims are subject to equitable tolling because of the fraudulent concealment on the part of Defendants. Smith v. EquiCredit Corp., No. 01-CV-4326, 2002 U.S. Dist. LEXIS 19395, at *4 (E.D.Pa. Oct. 4, 2002)); see also Wise v. Mortgage Lenders Network USA, Inc., 420 F.Supp.2d 389, 395-96 (E.D.Pa.2006) (citing Beauty Time v. VU Skin System, 118 F.3d 140, 144 (3d Cir.1997) ("Plaintiffs' underlying Complaint 'sounds inherently

in fraud or deceit' which, pursuant to the Third Circuit's decision in Beauty Time, automatically tolls the statute of limitations until such time as the fraud has, or should have been revealed.").

Defendant concealed material facts from Plaintiffs in order to induce Plaintiffs to obtain mortgage loans that Defendants had knowledge Plaintiffs would be unable to afford. Defendant failed to make material disclosures and suppressed numerous facts in connection with inducing Plaintiffs to enter into the loan agreements. Defendant is a sophisticated creditor in the mortgage industry and has superior knowledge of different types of mortgage loans and their consequences and used that knowledge to gain an unfair advantage of at the expense of Plaintiffs. Defendants' violations of federal statutes include, but are not limited to, the following:

- Failure to provide good faith estimate to Plaintiffs in advance of the closing date or within three days of their first loan applications;

- Deceiving Plaintiffs about the affordability of their monthly payments;

- Failure to provide accurate Truth in Lending Statements in advance of closing;

- Misrepresenting to Plaintiffs that the loans were affordable, although Defendants knew or should have known that Plaintiffs had low or fixed incomes; and

- Misrepresenting to Plaintiffs that the loans would provide them with an economic benefit;

Plaintiffs suffered injury as direct and proximate result of Defendants' conduct. Plaintiffs were deceived into signing the loan documents and suffered an ascertainable loss of money and of equity in their homes. Plaintiffs' injuries may be address through legal remedy.

The court should employ equitable tolling in order to avoid unjust results arising from Defendant's fraudulent concealment. Foster v. EquiCredit Corp., No. 99-6393, 2001 WL 177188, at *2 (E.D.Pa. Jan. 26, 2001). In Foster, the Court allowed the equitable tolling of the statute of

limitations for Plaintiffs' TILA claims. Plaintiffs claimed that Defendant lenders made false representations concerning the amount, types, and terms of mortgage loans. Plaintiffs attempted to obtain explanations of their loans on numerous occasions, and Defendant lender either failed to respond or responded with false information. The Court allowed equitable tolling of the statute of limitations, stating that contrary holding "would run the risk of rewarding wayward Defendants for evading the law's purposes for a statutorily proscribed time." "In short, allowing lenders to violate TILA, but avoid liability if they successfully conceal the violation from the debtor for a year, would undermine the core remedial purpose of TILA." Id. (quoting Ramadan, 156 F.3d at 502.) Denying equitable tolling in Plaintiffs' situation "would allow lenders to avoid liability through intentionally fraudulent actions using a statute designed to prohibit that same conduct." *Id.* at 502. The Court should avoid an unjust result and thereby permit the doctrine of equitable tolling to apply.

In the instant case, Plaintiffs attempted to obtain information from Defendants regarding their mortgage loans. Defendants either failed to respond or responded with false information. In addition, Defendants gave loan documents to Plaintiffs that contained terms different from those of the original agreement and contained either a forged signature or no signature.

13. The causes of action alleged herein did or will accrue only upon discovery of Defendant's fraudulent concealment, fraudulent conduct, and/or fraudulent misrepresentation to parties of the herein class action entering into agreements with Defendant's leading to the pursuit og these claims alleged herein. Because Plaintiffs were ignorant to the terms of the agreement entered into with Defendant and due to Defendant's fraudulent concealment, fraudulent conduct, and/or fraudulent misrepresentation to parties of the herein class action, Plaintiffs and members of the Class did not discover or could not have discovered through the exercise

of reasonable diligence the true nature of the agreements and terms within the agreements entered into with Defendant.

14. The exercise and conduct Defendant's initiated within its policies, transacting business and entering into agreements with potential and current borrowers, constitutes a pattern or a practice that fall under the herein alleged claim brought by this Class. The impact of such policies has affected individuals in the past, present, and will affect individual borrowers in the future. The claims from these borrowers who obtained mortgage loans from the Defendants prior to the initiation of this action are timely. Under the continuing violation doctrine, a statute of limitations may not bar claims where the Plaintiff challenges not just one incident but an unlawful practice that continues into the limitations period. Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982).

## **GENERAL FACTUAL ALLEGATIONS**

15. Plaintiffs are purchasers of residential properties.

16. Plaintiffs sought to obtain mortgage lending from Defendants for their properties.

17. Defendants engaged in sharp lending tactics. Defendant cannot reasonably assert that they were unaware of such lending tactics as a cursory review of the loan documents provided by Plaintiffs would reveal a predatory lending scheme.

18. Plaintiffs are mostly immigrants of Spanish or African descent. Plaintiffs are not wealthy and struggle to make a living in America. Many Plaintiffs have little or no income or assets. Plaintiffs are non-English speakers or speak little English and have not obtained high education background. Plaintiffs know little or nothing about mortgages.

19. Defendants discriminated against Plaintiffs based on the race, national origin, age, gender, educational background, and wealth. Defendants discriminated against Plaintiffs and induced

Plaintiffs into obtaining mortgage loans Defendants knew that, given Plaintiffs' financial circumstances, education, and background, could not repay.

20. Defendants enrolled Plaintiffs into a 80-20 Program whereby Defendants allowed Plaintiffs to obtain 100% financing on their properties without requesting any down payment by Plaintiffs.

21. Defendants enrolled Plaintiffs into a 80-10 Program whereby Defendants allowed Plaintiffs to obtain 90% financing on their properties and requesting little or no down payment by Plaintiffs.

22. Defendants gave Plaintiffs an adjustable rate mortgage whereby payment for the first two years was fixed and increased exponentially thereafter.

23. Defendants allowed Plaintiffs to obtain lending even though a review of Plaintiffs' history would show that Plaintiffs were high-risk borrowers.

24. Defendants allowed Plaintiffs to obtain lending even though a review of Plaintiffs' history would show that Plaintiffs had neither income nor assets ("No-Income No-Asset Program").

25. Defendants enrolled Plaintiffs into a Balloon Note Program under which Plaintiffs would obtain a mortgage allowing for lower monthly payment that are insufficient to fully amortize the face amount of the note prior to maturity and under which the principal sum known as a "balloon" would be due at maturity.

26. Defendants allowed Plaintiffs to enroll in a FHA/Government Program.

27. Defendants allowed Plaintiffs to obtain lending even though a review of Plaintiffs' history would show that Plaintiffs were high-risk borrowers.

28. Defendants allowed Plaintiffs to obtain lending after Defendants failed to verify Plaintiffs' stated income.

29. Defendants allowed Plaintiffs to obtain an adjustable rate mortgage by enrolling Plaintiffs in a Pick-a-Payment Loan.

30. Defendants allowed Plaintiffs to obtain mortgage at a 95% Loan to Value.

31. Defendants enrolled Plaintiffs into an 80-15-5 Program whereby Defendants allowed Plaintiffs to obtain 100% financing on their properties without requesting any down payment by Plaintiffs.

32. Defendants allowed Plaintiffs to obtain 90% financing on their properties by enrolling Plaintiffs into a 70-20 Program.

33. Defendants provided adjustable rate mortgages; their contrary disclosures constitute violations of the Truth-in-Lending Law. Defendants inaccurately stated the interest rate, total number of possible adjustments, amount financed and total payment to Plaintiffs.

34. Defendants violated federal statutes by providing false statements that stated the interest rates to be far lower than they actually were and by drastically misstating the total dollars financed. Also, Defendant misrepresented the fees and costs of the refinance.

35. Defendants made numerous material misrepresentations to Plaintiffs including, but not limited to the following: that the mortgage loans Defendants presented to Plaintiffs were affordable, that Plaintiffs could afford their mortgage loans, and that the mortgage loans were in Plaintiffs' best interests. Defendants knew of the falsity of their representations to Plaintiffs and intended that Plaintiffs rely on those representations.

36. Specifically, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants:

a. Failed to provide a good faith estimate to Plaintiffs in advance of the closing date or within three days of their first loan applications, thereby deceiving them about the affordability of the monthly payments;

b. Failed to provide accurate Truth in Lending Statements in advance of closing;

c. Misrepresented to Plaintiffs that the loans were affordable, although Defendants knew or should have known that Plaintiffs had low or fixed incomes; and

d. Misrepresented to Plaintiffs that the loans would provide them with an economic benefit;

37. Defendants had knowledge of falsity of statements. Defendants knew mortgage loans were not affordable, and specifically that Plaintiffs could not meet the loan obligations. Defendants knew mortgage loans were not in Plaintiffs' best interests.

38. Defendants had intention that Plaintiffs rely on their misrepresentations. Defendants made misrepresentations to Plaintiffs with intent to defraud, induce and trick Plaintiffs into obtaining the mortgage loans. Defendants made misrepresentations to Plaintiffs with reckless disregard of the truth. Defendants knew that Plaintiffs would not obtain the loans had they been told the truth.

39. Plaintiffs reasonably relied on Defendants' misrepresentations. Defendants are sophisticated creditors in the mortgage industry with superior knowledge to Plaintiffs. Plaintiffs reasonably relied on the expertise of Defendants to obtain a mortgage in their best interests.

40. Defendants' conduct was willful and has resulted in severe loss of money and property to Plaintiffs.

41. Plaintiffs ultimately executed individual notes with an adjustable rate loan.

42. Defendants did not make the proper Truth-in-Lending Act disclosures with calculations of the periodic APR increases up to the rate cup, which qualified the loan as "high cost" loans under the Home Ownership and Equity Protection Act (HOEPA).

43. A HOEPA loan is subject to far more scrutiny and requires that the lender provide additional disclosures and prohibits unverified loans, which Defendants failed to make.

44. Plaintiffs were unaware of the false information provided by Defendants when their applications were submitted.

45. Defendants failed to provide what was promised.

46. Defendants made fraudulent representations about the terms of the loan to Plaintiffs in order to induce Plaintiffs to obtain the mortgages on their houses.

47. Plaintiffs did not realize that the terms of their mortgages were different than what had previously been promised to them by Defendants until after the closings. Defendants had in fact given Plaintiffs given Adjustable Rate Mortgages.

48. Defendants and their principals did not provide Plaintiffs with important information, or otherwise through their actions or inactions caused Plaintiffs to enter into the subject loan transaction for the subject property.

49. Defendants knew or should have known that Plaintiffs lacked any capacity to enter into these mortgage loan contracts and/or did not understand the essential terms of the documents that they were executing.

50. To the extent that Defendants may have ever provided any written information contrary to what the Defendants promised Plaintiffs, that information was confusing, contradictory, inadequate, hidden and otherwise legally insufficient.

51. Defendants knew or should have known, based on their own review of the subject loan files, and/or previous reviews of the other loans by Defendants that Plaintiffs were being misled about essential loan terms and were not getting what they promised and/or that the proper and required notices were not timely furnished to Plaintiffs or furnished at all.

52. Upon information and belief, the employees, agents or principals of Defendants who reviewed other such loan files knew or should have known instances of fraud.

53. Before Plaintiffs entered the subject loans, the employees, agents or principals of Defendants discovered, or should have discovered that fraud was occurring in loan flipping products wherein mortgage lenders and/or brokers were misleading their borrowers into these loans.

54. Despite having actual or constructive notice that Defendants were misleading borrowers about the terms of such loans, Defendants and their employees, including the heads of the underwriting department and chief compliance officers) continued to allow them to submit and then fund these mortgages to borrowers despite their actual or constructive knowledge about what Defendants were doing.

55. Defendants and servants, representatives or employees whose identities are not yet known conspired together or with other Defendants to defraud Plaintiffs by making false promises and statements, and omitted providing important and mandated loan documents concerning the refinance transaction.

56. Aforementioned predatory lending and deceptive practices, fraudulent acts and omissions and similar conduct were not the first or the last involving the same Defendants.

57. Upon information and belief, in the past, Defendants or other employees or supervisors of Defendants have conspired with each other to defraud Plaintiffs who were then fraudulently induced into refinancing their mortgages.

58. Defendants engaged in the predatory lending practice known as "mortgage flipping" wherein a lender systematically and fraudulently strips the equity from a home with mortgage loans likely to result in foreclosure.

59. Defendants gave Plaintiffs at least one inaccurate Truth-in Lending Disclosure Statement that did not comply with the requirements of Federal Truth-In Lending laws.

60. Plaintiffs would not have accepted these loans if the consequences of that were properly explained to them.

## DAMAGES FROM THE ILLEGAL LENDING PRACTICE

61. As a result of the un-affordable mortgage from the defectively loans, Plaintiffs and the Class have or will suffer significant damages, including irreparable loss of their resident, loan application fees, closing costs, attorney fees, monthly payments, home equity, as well as. Furthermore, the resultant damage to Plaintiffs can cause the divorce of the family due to loss of their family home, creating a serious safety concern to both the Class Mortgage occupants and the public.

62. Unfortunately for Plaintiffs and the Class, they have or will have learned, usually after several years of paying their Class Mortgages, that their mortgages are not protected from the PMI and are highly prone to a series of problems associated with Defendant's defective mortgage and fraudulent promises only after Plaintiffs face the foreclosure of their mortgages, causing thousands of dollars in actual damages alone.

## DEFENDANTS' KNOWLEDGE, RECKLESSNESS OR NEGLIGENCE IN CONNECTION WITH ILLEGAL LENDING  PRACTICE

63. Defendants were well aware of the lending flaw which predisposed the Class Mortgages to fail and its related ensuing problems from many sources, including, but not limited to its representatives, dealers, and consumers. However, they took no action to adequately warn or

remedy the illegal lending practice, but instead concealed, suppressed and failed to disclose that the foreclosure was caused by the design defect in the illegal lending schemes. Despite its knowledge of the lending's predisposition to getting problem and causing foreclosure, evidenced in part by the fact that the customers are often told by Defendant's agents, that the mortgage could not be affordable and could be failed soon.

64. To the detriment of its consumers, Defendant intentionally failed to and continues to fail to warn, or even mention, anything about the illegal mortgage practice in the meeting with customers or any of the written materials to prevent foreclosure and the resulting damages.

65. Defendants have intentionally fraudulently concealed the illegal lending practice and continue to make misrepresentations to the damage and detriment of Plaintiffs and other Class members. As a result of Defendants' omissions and/or misrepresentations, borrowers of Class Mortgages have suffered or will suffer substantial damages.

## **DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS**

66. Defendant's continually falsely represented to Plaintiffs and the Class that the Class Mortgages were affordable and properly designed for the family. Defendants expressly promised that these mortgages were suitable for family and that the design of the Class mortgages was appropriate and affordable. Defendants further continually falsely represented and expressly promised to Plaintiffs and the Class that the Class Mortgages were affordable. These statements were materially false and misleading since they clearly know that the Class Mortgages were not affordable and reliable to these families.

67. Plaintiffs and the other Class members have no knowledge of these illegal mortgages and their resulting damages until sometime into the ownership of the mortgages, when the mortgage interest rate hikes or the end of the balloons.

68. As stated above, at no time did Defendants notify or attempt to remedy the defective loans to Plaintiffs and illegal lending practices known to them.

69. Defendant did not fully and truthfully disclose to its customers the true nature of the mortgages, which were not readily discoverable until years later, often after the interest hike or the payoff of the balloons. As a result, Plaintiffs and the other Class Members were fraudulently induced to purchase the Class Mortgages with the said design defects and all of the resultant problems, which permitted Defendants to amass enormous ill-gotten profits.

70. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other Class members. As described herein, Defendant made or caused to be made a series of materially false or misleading statements about the Class Mortgages, including affordability. These material misstatements and omissions had the cause and effect of inducing cautious consumers into purchasing the Class Mortgages while Defendant neglected to warn and remedy the inherent design defects known to them, thus causing the damages complained of herein.

## **DEFENDANT'S FRAUDULENT CONCEALMENT**

71. Defendant wrongfully and actively concealed from Plaintiffs and other Class members the true nature of the Class Mortgages, specifically concerning the affordability, the hiking of the interest, the balloon payment, and the amortization.      Defendant's misrepresentations that the Class Mortgages were affordable and reliable precluded Plaintiffs and other Class members from discovering the nature of the fraud. Defendant systematically, wrongfully and purposefully misled Plaintiffs and members of the Class and fraudulently concealed from them the truth by advising them that any problems in connection with these defective

mortgage were actually caused by outside influences, i.e., not mortgage's defects but their own failure to pay the mortgage. Defendant also wrongfully advised Plaintiffs and Class members that the mortgage was affordable and suitable to Plaintiffs' family.

72. Such intentional misrepresentations by Defendant that the mortgages were affordable were reasonably relied upon by Plaintiffs and the other Class members to their detriment in purchasing the Class Mortgages and by having their home foreclosed by Defendant.

73. As alleged herein, Plaintiffs have zealously pursued the uncovering of Defendant's fraud with due diligence as soon as they learned of the illegal lending practice and Defendant has not cured the defective mortgage.

## **SPECIFIC FACTS RELATED TO EACH INDIVIDUAL PLAINTIFF**

**Plaintiffs**

**Maria and Rolando Gutierrez**

74. Borrowers secured a 1st Mortgage from TD Bank March 5, 2007 in the amount of $372,000. The loan bore an initial rate of 6.440% per year. PHH Mortgage was also a Lender as were their successors & assigns. The loan regressed into default.

75. First Mortgage: The loan was written as a fixed rate 30 year loan with an interest rate of 6.440%. The loan was considered a "sub-prime" loan which required, by the Lenders, a higher than "par" interest rate. It was also categorized as "high risk".

76. A 2nd mortgage was noted dated 10/12/2007 to TD Bank in an amount of $45,060 at an apr of 7.790%. It is a 20 year fixed interest loan. Aggregate loan amount was then $417,060.

77. The completed HUD-1 closing statement was provided as signed. The Client was not provided completed and/or signed FNMAE form 1003 Mortgage Applications; no Amortization schedules, or Verification Statements for Employment and either a pro forma

or a Financial Statement were provided to the client. The ***Federal Disclosure Statement was not provided. Relevant & vital documents were unsigned. The Mortgage application (unsigned) stated that the Borrowers had $5,000 in liquid assets.***

78.  The source of the original mortgage solicitation was   not provided.

79. The True Value of the property from the taxing district of Summit for the transactional duration was $370,000. Therefore the LTV ratio imputed based on True Value was 112.70%; this aggressive LTV is well beyond insurable capacity and no PMI was even noted.

80. The loan apparently disregarded the ability to repay since the review of the client's financial situation revealed insufficient reliable income and liquidity as well as extended liabilities so as to make the aforementioned loan in excess of the Borrower's ability to repay. **The mortgage application indicates that the Borrower had modest liquid assets at the time.**

81. **Substantive Unconscionability: The UCCC considers entering into a transaction with the knowledge that the consumer could not receive a "substantial benefit" from it or if there was no reasonable probability of payment in full as demonstrable of "Substantive Unconscionability".**

82. The loan rates appeared to be of sub-prime nature since they clearly exceeded the rate borne by more "A" prime worthy customers. It was a "High Risk Loan" as referenced in NJPL 2009, c84 and NJPL 2008 c127.  Signed documentation including TIL, with annual percentage rate, finance charge, amount financed and total of payments were not disclosed in a clear & conspicuous manner as to reflect the legal obligations of the parties. These disclosures segregated from other information in a consumer-keep able format. None of those available documents were signed and/or provided.

83. Absent proper customer notification cited above, and with no proper HOEPA  notice, written

in conspicuous type size forthcoming, the Lender (s) seem seriously deficient in disclosures.

84. The Lender's should have been more aware of the shifting economic winds and have insisted on greater applicant equity and subsequently followed a more conservative lending policy to offset that pending value decline.

85. The loan amount was excessive and fraught with potential abuse. Defendants made numerous material representations to Borrowers including loan affordability and the deleterious effects of variable rate interest calculation.

86. **Predatory Lending: The pattern of irregularities, unrealistic asset-based reliance, flagrant lack of disclosures, and under-emphasis on liquidity contributed to *predatory lending*. These deceptive practices, fraudulent acts and omissions seemed poised to disregard and misrepresent the best interests of the Borrowers. High LTV loans set a stage for unrealistic expectations of payment in the future.  Predatory patterns were replete in this high-risk transaction.**

## CLASS ACTION ALLEGATIONS

87. <u>**Description of the Class**</u>: Plaintiffs bring this action on behalf of themselves and the class of similarly situated individuals who entered into loan transactions with named Defendants or their predecessors, directly or indirectly, where such transaction involved any of the wrongful conduct described herein. All Plaintiffs are not named because such identities are unknown to Plaintiffs and their counsel at this time. Such information can be ascertained through appropriate discovery from records maintained by Plaintiffs and their agents. Plaintiffs and their counsel are informed and believe that the number of potential Plaintiffs is in the hundreds or thousands.

88. **Class Certification**: Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") sets forth a two-pronged standard for class certification. To obtain class action certification, Plaintiffs must establish that all four prerequisites of Rule 23(a) are met and must also qualify under the one of the three sections of Rule 23(b). *Baby Neal, for and By Kanter v. Casey,* 43 F.3d 48, 55 (3d Cir.1994).

> Rule 23(a) requires a showing of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed.R.Civ.P. 23(a). Specifically, (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ... of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class"). *Agostino v. Quest Diagnostics Inc*, 256 F.R.D. 436 2009 WL 348898 CIV. 04-4362 (SRC 2009).

89. **Numerosity**: The proposed class consists of nearly 200 homeowners who have been affected by foreclosure and an unascertainable number of other affected homeowners. Foreclosure has threatened and continues to threaten millions of Americans across the country. Plaintiffs, who suffer from the same plight as millions of Americans across the country, are victims of deceptive and predatory lenders in the mortgage industry. As the proposed class consists of nearly 200 affected homeowners and includes countless other affected homeowners, Joinder is impracticable. U.S.C.A. Const. Amends. 8, 14; Fed. Rules Civil. Proc. Rule 23(a), 28 U.S.C.A.

90. **Commonality**: The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. *In re "Agent Orange" Prod. Liab. Lit.,* 818 F.2d 145, 166-67 (2d Cir.1987); *Weiss,* 745 F.2d at 808-09.

Because the requirement may be satisfied by a single common issue, it is easily met, as at least one treatise has noted. *See* H. Newberg & A. Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992). Furthermore, class members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice. *Hassine,* 846 F.2d at 177-78; *cf. Riley v. Jeffes,* 777 F.2d 143, 147 (3d Cir.1985) (finding constitutional violation in prisoners' being subject to constant threat of violence and sexual assault and rejecting contention that plaintiff must actually be assaulted before obtaining relief). Moreover, because they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Wright et al., § 1763, at 201.

Truth in Lending Act (TILA) class actions lend themselves readily to a finding that common questions predominate over individual ones, as they do in demonstrating the presence of common questions under Rule 23(A)(2). *Eovaldi v. First Nat. Bank of Chicago*, 57 F.R.D. 545 (N.D. Ill. 1972). In *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D. Ill. 2000), the named Plaintiff in an action by borrowers who took out payday loans against lenders, asserting claims under the Truth in Lending Act (TILA), contract law, and the Illinois Consumer Fraud Act met the predominance and superiority requirements of Rule 23(b)(3). This is precisely the kind of case that class action were designed for, with small or statutory damages brought by impecunious Plaintiffs who allege similar mistreatment by a comparatively powerful Defendant. *Matter of American Reserve Corp.*, 840 F.2d 487, 489, 10 Fed. R. Serv. 3d 868 (7th Cir. 1988) ("class actions aggregate claims and permit both compensation and deterrence that are otherwise impossible").

Similarly, class certification was warranted in *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540 (D.N.J. 1999) involving alleging affirmative misrepresentations of amounts paid to third parties by Cherry Hill Toyota on behalf of class members for MBP on standardized retail sales installment contracts in violation of the TILA and the New Jersey Consumer Fraud Act. These allegations presented common questions of law and fact.

In the instant case, the named Plaintiffs share numerous questions of fact and law with the grievances of the prospective class:

1. Whether Defendants, their employees and/or agents failed to provide required TILA disclosures clearly and conspicuously in writing and in a form that Plaintiffs could keep and/or understand;

2. Whether Defendants, their employees and/or agents falsified Plaintiffs' income without Plaintiffs' knowledge or consent;

3. Whether Defendants, their employees and/or agents enterprised a "bait and switch" scheme, in which Plaintiffs were lured in with promises of a particular set of loan terms, only to learn after entering the transaction that they had received a different and far less beneficial set of terms;

4. Whether documents, statements, contracts, advertisements and practices relating to the transactions between Plaintiffs and Defendants, their employees and/or agents were unfair, deceptive, untrue, misleading or omitted material facts and disclosures;

5. Whether Defendants, their employees and/or agents have been and are engaged in discrimination against Plaintiffs on the basis of race, national origin, age and/or gender;

6. Whether Defendants, their employees and/or agents have been and are engaged in unfair and unlawful business practices, including predatory lending practices against Plaintiffs;

7. Whether the acts of Defendants, their employees and/or agents alleged herein violated other applicable laws;

8. Whether injunctive relief prohibiting Defendants' unfair and unlawful business practices should be issued;

9. Whether declaratory relief giving Plaintiffs the right to rescind their mortgage loans should be issued;

10. Whether Plaintiffs have sustained damages and, if so, the proper measure of damages; and

11. Whether Plaintiffs are entitled to punitive damages.

In *Hassine v. Jeffes,* 846 F.2d 169 (3d Cir.1988), plaintiffs claimed that the conditions at the Graterford prison violated their constitutional rights. This court reversed the district court's denial of certification on commonality grounds; this court explained that Rule 23 did not require all plaintiffs actually to suffer the same injury; rather, the fact that the plaintiffs were subject to the injury, that they faced the immediate threat of these injuries, sufficed for Rule 23. In particular, the *Hassine* panel explained that the named plaintiffs could attack the inadequate mental health care provided at the prison despite the fact that none of them were in current need of those services; it was enough that they challenged the "inadequacy of the provision of any health care service, to which they are entitled, and which they might at some time require." *Hassine,* 846 F.2d at 178 n. 5.

Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded. Classes can be certified for certain particularized issues, and, under well-established principles of modern case management, actions are frequently bifurcated. In *Eisenberg v. Gagnon,* 766 F.2d 770 (3d Cir.1985), we held that a securities

fraud case against three separate partnerships, and hence three different general partners, met the commonality requirement. The individual damage determinations could be made, we explained, at a separate phase of the trial, but the class phase could resolve the central issue of liability for the alleged misrepresentations and omissions

91. **Typicality**: The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. 3B Moore & Kennedy, ¶ 23.06-02; 1 Newberg & Conte, § 3.13. The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees. *See Weiss,* 745 F.2d at 810.

"Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.' " *Hassine,* 846 F.2d at 177 (quoting *Eisenberg,* 766 F.2d at 786); *see also Hoxworth,* 980 F.2d at 923; *Appleyard,* 754 F.2d at 958. Commentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims. *See* 1 Newberg & Conte § 3.13. Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold.

"[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and

if it is based on the same legal theory." *Hoxworth,* 980 F.2d at 923 (citing *Grasty v. Amalgamated Clothing & Textile Workers Union,* 828 F.2d 123, 130 (3d Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988), and 1 Newberg & Conte § 3.15). In *Hoxworth,* this court affirmed over typicality objections the class certification of a (b)(3) class of securities investors who had purchased or sold any of twenty-one securities during a specified period. We explained that the claims stemmed solely from the defendant's "course of conduct in failing to advise purchasers of its excessive markup policy." *Id.; see also Appleyard,* 754 F.2d at 955 (reversing a denial of certification of a class challenging Alabama Medicaid admissions procedures).

Typicality was found in *Guarte v. Furniture Fair, Inc.*, 75 F.R.D. 525 (D. Md. 1977), in which a companywide credit policy was alleged to be in violation of the Truth in Lending Act (TILA), and such policy had been applied to the named Plaintiff. Typicality is by definition inherent in this class when each class members was subjected to the same FDCPA violation as the named representative when given information in violation of the FDCPA.

Typicality was also found in *Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129 (E.D. Ky. 1981), where the contracts used by the members of the class were similar to that signed by the named Plaintiff. In *Sarafin v. Sears Roebuck & Co.*, 73 F.R.D. 585 (N.D. Ill. 1977), the court found typicality where a retailer's monthly billing statement failed to disclose the annual percentage rate of the finance charge, and the named Plaintiff as well as the members of the class received the allegedly defective billing statements.

Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all

the injuries are shown to result from the practice. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. at 157-59, 102 S.Ct. at 2370-71.

In the instant case, the individual circumstances of the named Plaintiff's do not differ nor does the legal theory upon which the claims are based differ from that upon which the claims of other class members will perforce be based. The named Plaintiffs are in similar circumstances as the other class members. The named Plaintiffs, like other class members, were injured as a result of Defendants' predatory and deceptive lending practices and allege violations of Federal and state laws including the Truth in Lending Act and Regulation Z, the Real Estate Settlement Procedures Act, the Home Ownership and Equity Protection Act, the Racketeer Influenced and Corrupt Organizations Act, and the Fair Debt Collection Practices Act against Defendants.

Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983) (affirming certification of a class challenging a farmworker recruitment system even though some of the named plaintiffs had not worked for the defendant company during the disputed years and even though it was not clear that all plaintiffs had worked in the specific employment situation as the named plaintiffs).

92. **<u>Adequacy of Representation</u>**: "The inquiry that a court should make regarding the adequacy of representation requisite of Rule 23(a)(4) is to determine that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine*, 846 F.2d at 179. "Adequate

representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.1975).

The named Plaintiffs, through counsel, fairly and adequately represent the class. The attorneys in this case are more than capable of providing the legal assistance this case requires. The attorneys in this case have many years of litigation experience, both before this Court and elsewhere, and have won very large judgments for its clients in several of their cases. Counsel has met all deadlines this Court has set for them and has the ability to competently and vigorously represent Plaintiffs before the Court. The attorneys in this case are well-informed of the factual substance of this case as well as the legal issues involved. Plaintiffs and their lawyers are vigorously pursuing the interests of the class and have displayed the interest, ability and resources to continue representing the class fairly and thoroughly. The experience and competence of the class counsel give assurance of vigorous prosecution in this action. Katz v. Carte Blanche Corp., 52 F.R.D. 510 (W.D. Pa. 1971).

The named Plaintiffs do not have any conflicts amongst themselves or with unnamed members of the class that would make them unsuitable representatives. Plaintiffs themselves present a live controversy that they are eager to have the court resolve. Class members allege similar claims against Defendants and seek similar relief. No class members have an interest adverse to Plaintiffs. The Court held that, "where it is unlikely that segments of the class appellant represents would have interests conflicting with those she has sought to advance, and where the interests of that class have been competently urged at each level of the proceeding, we believe that the test of Rule 23(a) is met." *Id.* at 403, 95 S.Ct. 553.

Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice. *Kanter v. Casey,* 43 F.3d 48, 58 (3d Cir.1994). Under all the circumstances of this case, the named Plaintiffs suffering injury can represent the class members suffering identical or similar injuries and will fairly and adequately protect the interests of the class.

93. **Rule 23(b)**: The proposed class meets the requirements of Rule 23(b)(1) to (3).

94. Rule 23(b)(1) is satisfied if: "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests…"

The named Plaintiffs share identical claims with the other class members and allege similar conduct on part of Defendants. Plaintiffs accuse Defendants of violations of the Truth in Lending Act and Regulation Z, the Real Estate Settlement Procedures Act, the Home Ownership and Equity Protection Act, the Racketeer Influenced and Corrupt Organizations Act, and the Fair Debt Collection Practices Act against Defendants and for engaging in other fraudulent, deceptive, and predatory lending practices. Plaintiffs and other class members allege that Defendants induced Plaintiffs to obtain mortgage loans with the intention that Plaintiffs default on their loan obligations so that Defendants could repossess the homes.

Plaintiffs should be allowed to move forward on the class action. Because the circumstances of the named Plaintiffs and other class members are so similar and because their claims present similar legal issues and legal theories, any slight variation between the prosecution of any class member would result in inconsistent or varying adjudications with respect to individual class members and would establish incompatible standards of conduct for the party opposing the class. Likewise, due to the likeness of the claims and issues presented by the named Plaintiffs and other class members, adjudications with respect to individual class members may be dispositive of the interests of their other members not parties to the individual adjudications and would substantially impair or impede their ability to protect their interests.

95. Rule 23(b)(2) is satisfied if: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole…"

The Complaint demands injunctive relief against Defendants. Defendants induced Plaintiffs to obtain mortgage loans that Defendants knew Plaintiffs could not to afford. Inevitably, Plaintiffs defaulted on their loans obligations. As a result, the named Plaintiffs and other class members are threatened with foreclosure and Defendants are seeking to repossess their homes. Plaintiffs demand injunctive relief against Defendants to prevent Defendants from foreclosing upon Plaintiffs and other class members and depriving them of their homes. Defendants' misconduct warrants final injunctive relief with respect to the class as a whole.

96. Rule 23(b)(3) is satisfied if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action…"

The predominance inquiry incorporates the commonality inquiry of Rule 23(a)(2), which "is satisfied if the named plaintiff[ ] share[s] at least one question of fact or law in common with the grievances of the prospective class." *Stephenson,* 177 F.R.D. at 286 (citing *Baby Neal,* 43 F.3d at 56). "The predominance inquiry focuses on whether the efficiencies gained in resolving these common issues together are outweighed by the individual issues presented for adjudication." *Id.* (citing *In re Prudential Ins. Co. of America,* 962 F.Supp. 450, 511 (D.N.J.1997), *aff'd,* 148 F.3d 283 (3d Cir.1998), *cert. denied,* --- U.S. ----, 119 S.Ct. 890, 142 L.Ed.2d 789 (1999)). "That common issues must be shown to 'predominate' does not mean that individual issued need be non-existent". All class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other. *In re Ford Motor Co.,* 174 F.R.D. at 340 (citations omitted).

In the instant case, common issues of law and fact clearly predominate. This case involves affirmative misrepresentations and omissions of terms and responsibilities of certain mortgage documents given to the named Plaintiffs and other class members by Defendants in violation of Federal and state laws, namely the TILA and the New Jersey Consumer Fraud Act. These allegations present common questions of law and fact and predominate over individual issues. *See Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 605-08, 691 A.2d 350

(1997)(plaintiff need not prove intent to defraud or detrimental reliance upon affirmative misrepresentation under Consumer Fraud Act).

Therefore, Plaintiffs have satisfied the commonality requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(a)(3).

Further, litigating this case as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Plaintiffs are mostly immigrants in this country with poor financial background. They are non-English speakers or speak very little English. Plaintiffs are wary of the legal system and distance themselves from becoming heavily involved in any litigation.

Alone, each Plaintiff would be reluctant and unwilling to institute an action against any individual or a few Defendants. Individually, each Plaintiff is not willing to undertake the risk involved in litigation. Moreover, Plaintiffs do not have time, money, and wherewithal to litigate their individual claims. Plaintiffs have heard horror stories about the stress, pressure, and hassle caused by litigation. However, Plaintiffs are more willing to join as a class action, in which they approve of the named Plaintiffs and acknowledge the competency and experience of the class action counsel. Plaintiffs can trust in the named Plaintiffs and counsel to fairly and adequately represent the claims of all aggrieved class members.

97.  The proposed class herein should be certified as a class action pursuant to Fed.R.Civ.Proc. R. 23. Plaintiffs have established all four prerequisites of Rule 23(a) and at least one of the three sections of Rule 23(b). *Baby Neal, for and By Kanter v. Casey,* 43 F.3d 48, 55 (3d Cir.1994).

## <u>COUNT ONE</u>
### (Truth in Lending Act & Regulation Z)

98. Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

99. Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants are creditors involved in consumer credit transactions within the meaning of the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.* (hereinafter,"TILA").

100.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants are creditors who regularly extend credit by means of a written agreement or with a finance charge.

101.   Plaintiffs are purchasers of residential properties and sought to obtain mortgage lending from Defendants.

102.   Defendants induced Plaintiffs to obtain certain loans.

103.   Defendants knew Plaintiffs would be unable to afford said loans but told Plaintiffs that the loans were affordable and in Plaintiffs' best interests.

104.   Plaintiffs inevitably defaulted on said loans and are threatened foreclosure.

105.   As defined in 15 U.S.C.A. 1602, the transactions between Plaintiffs and Defendants "sale(s)," Plaintiffs were "consumer(s)," Defendants were "creditor(s)," and pursuant to 15 U.S.C.A. 1638, Defendants were required to make certain specified disclosures to Plaintiffs "before the credit is extended." 15 U.S.C.A. 1638(b)(1).

106.   The agreements Plaintiffs were induced to sign had numerous blanks and/or omissions that represented disclosures required of Defendants to be made pursuant to 15 U.S.C.A. 1638.

107.   The failure to make the disclosures "before the credit is extended" as required by 15 U.S.C.A 1638(b) was, on information and belief, willful and deliberate, and calculated to

induce Plaintiff to enter into loans they could not afford and eventually be foreclosed upon as set forth above. Also, on information and belief, the misstatements, failures to make required disclosures, and the misrepresentations, as stated previously, could not have been made if Defendants maintained procedures reasonably adapted to avoid such occurrences.

108.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants failed to comply with TILA and the regulations promulgated thereunder in the following ways, including but not limited to:

    a.    Specifically, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants failed to include in the finance charge certain charges imposed by and payable by Plaintiffs incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z §226.4, thus improperly disclosing the finance charge in violation of 15 U.S.C. §1638(a)(3) and Regulation Z §226.18(d);

    b.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants improperly included or improperly failed to include certain charges in the amount financed and thus improperly disclosed the amount financed in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z §226.18(b);

    c.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants, by calculating the Annual Percentage Rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, the lenders understated the disclosed APR in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z § 226.18(c);

d.  Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants also failed to provide the following required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(a) and (b) including but not limited to:

    i.  the identity of the creditor required to make disclosure;

    ii.  the "amount financed," which shall be the amount of credit of which Plaintiffs have actual use;

    iii.  a statement of Plaintiffs' right to obtain, upon a written request, a written itemization of the amount financed;

    iv.  the "finance charge", not itemized, using that term;

    v.  the "total of payments," which shall be the sum of the amount financed and the finance charge;

    vi.  the number, amount, and due dates or period of payments scheduled to repay the total of payments;

    vii.  the "total sale price", using that term, which shall be the total of the cash price of the property or services, additional charges, and the finance charge;

    viii.  the amount of the downpayment;

    ix.  where the credit is secured, a statement that a security interest has been taken in

    x.  the property which is purchased as part of the credit transaction

    xi.  any dollar charge or percentage amount which may be imposed by a creditor solely on account of a late payment;

xii.   a statement indicating whether or not Plaintiffs are entitled to a rebate of any finance charge upon refinancing or prepayment in full pursuant to acceleration or otherwise, if the obligation involves a precomputed finance charge;

xiii.   a statement that Plaintiffs should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties;

xiv.   a statement indicating whether a subsequent purchaser or assignee of Plaintiffs may assume the debt obligation on its original terms and conditions;

xv.   a statement that the periodic payments may increase or decrease substantially, and the maximum interest rate and payment for a $10,000 loan originated at a recent interest rate;

xvi.   a clear and conspicuous statement that: (1) the interest on the portion of the credit extension that is greater than the fair market value of the dwelling is not tax deductible for Federal income tax purposes; and (2) Plaintiffs should consult a tax adviser for further information regarding the deductibility of interest and charges.

xvii.   good faith estimates of the disclosures required in accordance with regulations of TILA;

xviii.   disclosures that state in conspicuous type size and format, the following: "You are not required to complete this agreement merely because you have received these disclosures or signed a loan application."; and provided in the form of final disclosures at the time of consummation of the transaction;

xix.  disclosures that label the payment schedule as follows: "Payment Schedule: Payments Will Vary Based on Interest Rate Changes"; state in conspicuous type size and format examples of adjustments to the regular required payment on the extension of credit based on the change in the interest rates specified by the contract for such extension of credit.

xx.  an additional, corrected statement to the borrower, not later than 3 business days before the date of consummation of the transaction;

xxi.  disclosures that are comprehensible to borrowers, with a clear format and design; provide for clear and conspicuous disclosures; enable borrowers easily to identify material terms of the loan and to compare such terms among private education loans; and are succinct, and use an easily readable type font;

e.  Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants failed to provide the following required disclosures prior to consummation of the transaction in violation of Regulation Z §226.17(a) and (b), including but not limited to:

i.  disclosures that are clearly and conspicuously in writing, in a form that Plaintiffs may keep;

ii.  disclosures of ``finance charge'' and ``annual percentage rate'' that conspicuous;

iii.  disclosures that reflect the terms of the legal obligation between the parties;

iv.  information necessary for accurate disclosures

v.  disclosures based on an assumed maturity of 1 year if an obligation is payable on demand

    f.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants failed to provide two (2) adequate and valid same lender refinancing notices of right to cancel and rescind the transaction within three days of the consummation or the delivery of the proper disclosures in violation of 15 U.S.C. § 1635.

109.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants are liable because the aforementioned violations are apparent on the face of the relevant documents including the disclosure statements, any itemizations of the amount financed, the note and other disclosures of disbursement.

110.   Defendants' conduct was willful and has resulted in severe loss of money and property to Plaintiffs.

**WHEREFORE** Defendants are individually and severally liable to the Plaintiffs for the following, which Plaintiffs demand as relief:

    a.   Actual damages;

    b.   Statutory penalties, including doubling of finance charge, minimum/maximum awards, $200;

    c.   Voiding or rescinding the entire mortgage loan transaction;

    d.   Terminating or rescinding the mortgage and security interest in the property;

    e.   Returning any and all monies paid by Plaintiffs including all payments made in connection with said mortgage loan transaction; and;

    f.   Payment for actual damages to be determined at trial, including attorneys' fees and costs.

    g.   Punitive damages.

h.   Recovery permissible under the deceptive trade practice statute of this State;

i.   Costs and reasonable attorney's fees

j.   Consumer creditor setoff

## COUNT TWO
**(Real Estate Settlement Procedures Act, 12 U.S.C. Section 2601 et seq.)**

111.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

112.   As mortgage lenders, Defendants, individually and collectively, are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA") contained at 12 U.S.C. Section 2601 et. seq.

113.   In violation of 12 U.S.C. Section 2607, and in connection with the respective mortgage loans made to Plaintiffs, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants accepted fees for providing real estate settlement services when in fact those fees were for charges unrelated to the real estate settlement services.

114.   Upon information and belief, Defendants, through their acts and omissions, violated the Real Estate Settlement Practices Act, Title 12, 12 U.S.C. Section 2601 et. seq. These acts and omissions include but are not limited to the aforesaid.

115.   Defendants accepted fees for work they did not perform.

116.   The costs and fees of Defendants at the closing exceeded those listed on the good faith estimates.

117.   The RESPA statements in these transactions were otherwise deficient, improper and failed to comply with federal and state law.

118.    Defendants failed to distribute special information booklets to Plaintiffs prepared by the Secretary to lenders to help borrowers in violation of Title 12, Ch. 27 § 2604. The booklets were designed to help persons borrowing money to finance the purchase of residential real estate in order to better understand the nature and costs of real estate settlement services.

119.    Defendants failed to make required disclosures to Plaintiffs relating to assignment, sale, or transfer of loan servicing in violation of Title 12, Ch. 27 § 2605. Under § 2605, Defendants, who made federally related mortgage loans were obligated to disclose to Plaintiffs, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

120.    Even in the event that Defendants did make the required disclosures under § 2605, Defendants failed to include required contents of notice under § 2605(3), specifically:

    a.   the effective date of transfer of the servicing;

    b.   the name, address, and toll-free or collect call telephone number of the transferee servicer;

    c.   a toll-free or collect call telephone number for

        i.   an individual employed by the transferor servicer, or

        ii.   the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

    d.   the name and toll-free or collect call telephone number for

        i.   an individual employed by the transferee servicer, or

        ii.   the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing;

e.  the date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments;

f.  any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance and what action, if any, the borrower must take to maintain coverage;

g.  a statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan;

121.    Defendants accepted fees, kickbacks, or things of value pursuant to agreements or understandings, oral or otherwise, regarding business incident to or a part of a real estate settlement service involving a federally related mortgage loan in violation of Title 12, Ch. 27 § 2607.

122.    Defendants accepted portions, splits, or percentages of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan in violation of Title 12, Ch. 27 § 2607.

123.    Defendants committed numerous violations of Title 12, Ch. 27 § 2609, which places limitations on the requirement of advance deposits in escrow accounts.

124.    Defendants, in connection with making federally related mortgage loans, required Plaintiffs to: (1) to deposit in an escrow account established in connection with the loan for the purpose of assuring payment of taxes, insurance premiums, or other charges with respect to the property, in connection with the settlement, an aggregate sum (for such purpose) in

excess of a sum that will be sufficient to pay such taxes, insurance premiums and other charges attributable to the period; (2) to deposit in an escrow account a sum in excess of the sum of

    a.  one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges which are reasonably anticipated to be paid on dates during the ensuing twelve months which dates are in accordance with the normal lending practice of the lender and local custom, provided that the selection of each such date constitutes prudent lending practice, plus

    b.  such amount as is necessary to maintain an additional balance in such escrow account not to exceed one-sixth of the estimated total amount of such taxes, insurance premiums and other charges to be paid on dates, as provided above, during the ensuing twelve-month period.

125.    Defendants imposed charges upon Plaintiffs in connection with federally related mortgage loans made by Defendants for or on account of the preparation and submission by Defendants of the statement or statements required Sections 2603 and 2609 (c) of this RESPA title or by the Truth in Lending Act [15 U.S.C. 1601 et seq.] in violation of Title 12, Ch. 27 § 2610.

126.    As a consequence of the violations of Defendants, Plaintiffs suffered damages.

## <u>COUNT THREE</u>
### (RESPA Servicing Violations)

127.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

128.    As mortgage lenders, Defendants, individually and collectively, are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA") contained at 12 U.S.C. Section 2601 et. seq.

129.    In violation of 12 U.S.C. Section 2607, and in connection with the respective mortgage loans made to Plaintiffs, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants accepted fees for providing real estate settlement services when in fact those fees were for charges unrelated to the real estate settlement services.

130.    Upon information and belief, Defendants, through their acts and omissions, violated the Real Estate Settlement Practices Act, Title 12, 12 U.S.C. Section 2601 et. seq. These acts and omissions include but are not limited to the aforesaid.

131.    Defendants accepted fees for work they did not perform.

132.    The costs and fees of Defendants at the closing exceeded those listed on the good faith estimates.

133.    The RESPA statements in these transactions were otherwise deficient, improper and failed to comply with federal and state law.

134.    Defendants failed to distribute special information booklets to Plaintiffs prepared by the Secretary to lenders to help borrowers in violation of Title 12, Ch. 27 § 2604. The booklets were designed to help persons borrowing money to finance the purchase of residential real estate better to understand the nature and costs of real estate settlement services.

135.    Defendants failed to make required disclosures to Plaintiffs relating to assignment, sale, or transfer of loan servicing in violation of Title 12, Ch. 27 § 2605. Under § 2605, Defendants, who made federally related mortgage loans were obligated to disclose to

Plaintiffs, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

136.    Even in the event that Defendants did make the required disclosures under § 2605, Defendants failed to include required contents of notice under § 2605(3), specifically:

    a.  the effective date of transfer of the servicing;

    b.  the name, address, and toll-free or collect call telephone number of the transferee servicer;

    c.  a toll-free or collect call telephone number for

        i.  an individual employed by the transferor servicer, or

        ii.  the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

    d.  the name and toll-free or collect call telephone number for

        i.  an individual employed by the transferee servicer, or

        ii.  the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing;

    e.  the date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments;

    f.  any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance and what action, if any, the borrower must take to maintain coverage;

g.   a statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan;

137.   Defendants accepted fees, kickbacks, or things of value pursuant to agreements or understandings, oral or otherwise, regarding business incident to or a part of a real estate settlement service involving a federally related mortgage loan in violation of Title 12, Ch. 27 § 2607.

138.   Defendants accepted portions, splits, or percentages of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan in violation of Title 12, Ch. 27 § 2607.

139.   Defendants committed numerous violations of Title 12, Ch. 27 § 2609, which places limitations on the requirement of advance deposits in escrow accounts.

140.   Defendants, in connection with making federally related mortgage loans, required Plaintiffs to: (1) to deposit in an escrow account established in connection with the loan for the purpose of assuring payment of taxes, insurance premiums, or other charges with respect to the property, in connection with the settlement, an aggregate sum (for such purpose) in excess of a sum that will be sufficient to pay such taxes, insurance premiums and other charges attributable to the period; (2) to deposit in an escrow account a sum  in excess of the sum of

a.   one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges which are reasonably anticipated to be paid on dates during the ensuing twelve months which dates are in accordance with the normal lending practice of the

lender and local custom, provided that the selection of each such date constitutes prudent lending practice, plus

b.  such amount as is necessary to maintain an additional balance in such escrow account not to exceed one-sixth of the estimated total amount of such taxes, insurance premiums and other charges to be paid on dates, as provided above, during the ensuing twelve-month period.

141.   Defendants imposed charges upon Plaintiffs in connection with federally related mortgage loans made by Defendants for or on account of the preparation and submission by Defendants of the statement or statements required Sections 2603 and 2609 (c) of this RESPA title or by the Truth in Lending Act [15 U.S.C. 1601 et seq.] in violation of Title 12, Ch. 27 § 2610.

142.   In violation of 12 U.S.C. Section 2607, and in connection with the respective mortgage loans made to Plaintiffs, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants accepted fees for providing real estate settlement services when in fact those fees were for charges unrelated to the real estate settlement services.

143.   As a result of violating RESPA, and pursuant to 12 U.S.C. Section 2607(d)(2), Defendants, individually and collectively, are liable to Plaintiffs in an amount equal to three times the amount of charges paid for the settlement services by Plaintiffs.

144.   The act and practices alleged whereat constitute violations of Section 623(a)(2) of the FCRA, and 15 U.S.C. Section 1681s-2(a)(2).

145.   As a consequence of the violations of Defendants, Plaintiffs suffered damages.

## COUNT FOUR
### (Fair Debt Collection Practices Act)

146.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

147.    Plaintiffs bring this action under Sections 5(m)(1)(A), 13(b), and 16(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. 45(m)(1)(A), 53(b), and 56(a) and Section 814 of the Fair Debt Collection Practices Act, 15 U.S.C. 16921, to obtain monetary civil penalties, and injunctive or other relief for the Defendant's violations of the Fair Debt Collection Practices Act.

148.    Defendants are debt collectors as the term is defined in Section 803(6) of the Fair Debt Collection Practices Act, 15 U.S.C. 1692a(6). Defendants are persons or entities engaged in collecting debts as a principal business. Defendants are persons or entities that regularly collect debts of another. Defendants collect debts through use of a means of interstate commerce. Defendants are not attempting to collect its "own" debt. Defendants qualify for none of the exemptions available under the FDCPA. Defendants' activities in attempting to collect debt of another person qualify for none of the exemptions from coverage available under the FDCPA.

149.    Plaintiffs are "consumer(s)," or any natural person obligated or allegedly obligated to pay any debt, as "debt" is defined in Section 803(5) of the Fair Debt Collection Practices Act, 15 U.S.C. 1692a(5).

150.    In 1977, Congress passed the Fair Debt Collection Practices Act, 15 U.S.C. 1692 to 1692o, which became effective on March 20, 1978, and has been in force ever since that date. Section 814 of the Fair Debt Collection Practices Act, 15 U.S.C. 16921, authorizes the Commission to use all of its functions and powers under the Federal Trade Commission Act

to enforce compliance with the Fair Debt Collection Practices Act by any debt collector, irrespective of whether that debt collector is engaged in commerce or meets any other jurisdictional tests set by the Federal Trade Commission Act, including the power to enforce the provisions of the Fair Debt Collection Practices Act in the same manner as if the violations were violations of a Federal Trade Commission trade regulation rule.

151. Defendants have committed numerous violations of the Fair Debt Collection Practices Act.

152. Each of the following allegations is pled in the alternative, and without waiver.

153. Defendants failed to comply with restrictions in the FDCPA regarding communications with Plaintiffs:

    a. Defendants communicated with Plaintiffs at unusual or inconvenient time or places;

    b. Defendants made unauthorized attempts to contact Plaintiffs at his or her place of employment;

    c. Defendants made unauthorized contact with Plaintiffs represented by attorney;

    d. Defendants persistently communicated with Plaintiffs even after Plaintiffs refused to pay debt or asked Defendants to cease communications.

154. Defendants failed to comply with restrictions in the FDCPA regarding communications with third persons.

155. Defendants failed to comply with restrictions in the FDCPA on acquisition of location information:

    a. Defendants made unauthorized contact third person where Plaintiffs were represented by attorney;

b. Defendants identified themselves to third person as debt collector or by business name;

c. Defendants made remarks third person that Plaintiffs owed debt;

d. Defendants made repeated contact with third person without request by third person for further communication, or reasonable belief by debt collector that third person gave erroneous information initially and now has correct information.

156. Defendants failed to provide notice of purpose of communication to Plaintiffs in violation of the FDCPA.

157. Defendants failed to provide notice of procedure for validation of debt to Plaintiffs in violation of the FDCPA.

158. Defendants engaged in harassing or abusive collection practices in violation of the FDCPA including but not limited to:

a. Use or threatened use of violence to a person, reputation or property;

b. Use of obscene or profane language, or language obviously intended to abuse hearer or reader;

c. Publication of a list of alleged deadbeats, except to a consumer reporting agency or similar resource;

d. Advertising debt for sale, if done to embarrass Plaintiffs as a means to coerce payment;

e. Causing telephone to ring or engaging anyone in telephone conversations repeatedly or continuously, or without disclosing caller's identity;

159. Defendants engaged in misleading or deceptive collection practices in violation of the FDCPA including but not limited to:

a. Indication that collector is vouched by or affiliated with government, such as use of a badge, uniform, or the like;

b. False representation of character, amount, or legal status of debt, or false representation of services or charges which may legally be imposed by collector;

c. False indication that communication is from an attorney, or that an attorney is involved in the collection effect, when an attorney is not fact involved;

d. Representation that non-payment of debt will result in arrest or imprisonment of any person, or seizure, garnishment or attachment of assets, unless such remedy is lawful in the specific circumstances of the case, and collector or creditor actually intends to pursue such remedy;

160.   On numerous occasions, in connection with the collection of debts in both English and other languages, without the prior consent of Plaintiffs given directly to the debt collector or the express permission of a court of competent jurisdiction, Defendants have communicated with Plaintiffs at times or places that Defendants knew or should have known to be inconvenient to Plaintiffs, including their places of employment after Plaintiffs informed Defendants' collectors that calls at work were inconvenient, in violation of Section 805(a)(1) of the Act, 15 U.S.C. 1692c(a)(1).

161.   On numerous occasions, in connection with the collection of debts in both English and other languages, Defendants have communicated with third parties, including parents, children, and employers, for purposes other than acquiring location information about Plaintiffs without having obtained directly the prior consent of Plaintiffs or the express permission of a court of competent jurisdiction, and when not reasonably necessary to

effectuate a post judgment judicial remedy, in violation of Section 805(b) of the Fair Debt Collection Practices Act, 15 U.S.C. 1692c(b).

162.    On numerous occasions, in connection with the collection of debts, in both English and other languages, Defendants have engaged in conduct the natural consequences of which is to harass, oppress, or abuse a person in violation of Section 806 of the Fair Debt Collection Practices Act, 15 U.S.C. 1692d, including, but not limited to, the following:

   a.   Defendants, or person(s) acting on Defendants' behalf, have used obscene or profane language, or language the natural consequence of which is to abuse the hearer, in violation of Section 806(2) of the Fair Debt Collection Practices Act, 15 U.S.C. 1692d(2); and

   b.   Defendants, or person(s) acting on Defendants' behalf, have caused a telephone to ring, or have engaged a person in telephone conversations, repeatedly or continuously, with intent to annoy, abuse, or harass the person at the called numbers, in violation of Section 806(5) of the Fair Debt Collection Practices Act, 15 U.S.C. 1692d(5).

163.    On numerous occasions, in connection with the collection of debts in both English and other languages, Defendants, or person(s) acting on Defendants' behalf, have used false, deceptive, or misleading representations or means, in violation of Section 807 of the Fair Debt Collection Practices Act, 15 U.S.C. 1692e, including, but not limited to, the following:

   a.   Defendants, or person(s) acting on Defendants' behalf, have falsely represented or implied that nonpayment of a debt will result in the arrest or imprisonment of a person or the seizure, garnishment, or attachment of a person's wages or property, when such action is not lawful or when neither Defendant nor the creditor has

intended to take such action, in violation of Section 807(4) of the Fair Debt Collection Practices Act, 15 U.S.C. 1692e(4); and

b. Defendants, or person(s) acting on Defendants' behalf, have threatened to take an action that cannot legally be taken or that is not intended to be taken, in violation of Section 807(5) of the Fair Debt Collection Practices Act, 15 U.S.C. 1692e(5).

164.    On numerous occasions, in connection with the collection of debts that were in default by Plaintiffs when obtained by Defendants, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants have used false, deceptive or misleading representations or means, in violation of Section 807 of the FDCPA, and 15 U.S.C. Section 1692(e), including but not limited to:

a.    Falsely representing the character, amount, or legal status of a debt, or any services rendered or compensation which may be lawfully received by a debt collector for collection of a debt, in violation of Sections 807(2) (A) and (B) of the FDCPA, and 15 U.S.C. Section 1692(e)(2) (A) and (B);

b. Communicating or threatening to communicate to any persons credit information known to be or which should be false, including the failure to communicate that a disputed debt is disputed, in violation of Section 807(8) of the FDCPA, 15 U.S.C. Section 1692(e)(8), and;

c. Using false representations or deceptive means to collect or attempt to collect debts or obtain the information concerning Plaintiffs in violation of Section 807(10) of the FDCPA, 15 U.S.C. Section 1692(e)(10).

165.    Defendants' acts and practices constitute unfair and deceptive acts and practices.

166.    On numerous occasions, in connection with the collection of debts that were in default by Plaintiffs when obtained by Defendants, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants have used unfair or unconscionable means to collect or attempt to collect debt, including but not limited to collecting amounts (including any interest, fee, charge, or expense incidental to the principal obligation) not authorized by the agreement creating the debt or permitted by law in violation of Section 808(I) of the FDCPA, and 15 U.S.C. Section 1692(f)(1).

167.    Defendants' conduct was willful and has resulted in severe loss of money and property to Plaintiffs.

168.    Plaintiffs demand civil penalties and injunctions against each and every Defendant.

169.    Defendant has violated the Fair Debt Collection Practices Act as described above, and has acted at all times with actual knowledge or knowledge fairly implied on the basis of objective circumstances, as set forth in Section 5(m)(1)(A) of the Federal Trade Commission Act, 15 U.S.C. 45(m)(1)(A).

170.    Section 5(m)(1)(A) of the Federal Trade Commission Act, 15 U.S.C. 45(m)(1)(A); Section 814(A) of the Fair Debt Collection Practices Act, 15 U.S.C. 16921; and Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. 2461, as amended, authorize the Court to award monetary civil penalties to Plaintiffs for each violation of the Fair Debt Collection Practices Act committed by Defendants.

171.    Each instances within five years preceding the filing of this Complaint, in which Defendant has failed to comply with the Fair Debt Collection Practices Act in one or more of the ways described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

172.   Under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. 53(b), this Court is authorized to issue a permanent injunction to ensure that Defendant will not continue to violate the Fair Debt Collection Practices Act.

173.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants have committed numerous violations of Section 806 of the Fair Debt Collection Practices Act or 15 U.S.C. 1692d including but not limited to:

    a.   engaging in any conduct the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

    b.   engaging in the use or threat of use of violence or other fraudulent means to harm the physical person, reputation, or property of any person;

    c.   engaging in the use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader;

    d.   causing publication of a list of Plaintiffs who allegedly refuse to pay debts;

    e.   causing advertisement for sale of any debt to coerce payment of the debt;

    f.   causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

    g.   placing telephone calls without meaningful disclosure of the caller's identity.

174.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants have committed numerous violations of Section 807 of the Fair Debt Collection Practices Act or 15 U.S.C. 1692e including but not limited to:

    a.   utilizing false, deceptive, or misleading representation or means in connection with the collection of any debt

b.   utilizing false representations or implications that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof;

c.   utilizing the false representation of (1) the character, amount, or legal status of any debt (2) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt;

d.   utilizing the false representation or implication that any individual is an attorney or that any communication is from an attorney;

e.   utilizing the representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person;

f.   threatening to take action that cannot legally be taken or that is not intended to be taken;

g.   utilizing the false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause Plaintiffs to (1) lose any claim or defense to payment of the debt (2) become subject to any practice prohibited by this title;

h.   utilizing the false representation or implication that Plaintiffs committed any crime or other conduct in order to disgrace Plaintiffs;

i.   communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed;

j.   utilizing or distributing written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or

agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval;

k.  utilizing false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning Plaintiffs;

l.  failing to disclose in the initial written communication with Plaintiffs and failing to disclose, in the case in which the initial communication with Plaintiffs is oral, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose;

m.  utilizing the false representation or implication that accounts have been turned over to innocent purchasers for value;

n.  utilizing the false representation or implication that documents are legal process;

o.  utilizing a business, company, or organization name other than the true name of the debt collector's business, company, or organization;

p.  utilizing the false representation or implication that documents are not legal process forms or do not require action by Plaintiffs;

q.  utilizing the false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 603(f) of this Act.

175.  Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants have committed numerous violations of Section 808 of the Fair Debt Collection Practices Act or 15 U.S.C. 1692f including but not limited to:

a.  engaging in unfair or unconscionable means to collect or attempt to collect a debt;

b.  collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) that is not expressly authorized by the agreement creating the debt or permitted by law;

c.  accepting from a person a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit;

d.  soliciting a postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution;

e.  depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument;

f.  causing charges to be made to any person for communications by concealment of the true propose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees;

g.  taking or threatening to take any nonjudicial action to effect dispossession or disablement of property even though there was no present right to possession of the property claimed as collateral through an enforceable security interest and/or there was no present intention to take possession of the property and/or the property was exempt by law from such dispossession or disablement;

h.  communicating with Plaintiffs regarding a debt by post card;

i.  using a language or symbol, other than the debt collector's address, on an envelope when communicating with Plaintiffs by use of the mails or by telegram.

176.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants have committed violations of Section 810 of the Fair Debt Collection Practices Act or 15 U.S.C. 1692h by applying payment from Plaintiffs to a debt that is disputed by Plaintiffs in the case in which Plaintiffs owed multiple debts and made any single payment to any debt collector with respect to such debts.

177.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants have committed numerous violations of Section 812 of the Fair Debt Collection Practices Act or 15 U.S.C. 1692j by designing, compiling, and furnishing a form knowing that such form would be used to create the false belief in Plaintiffs that a person other than the creditor of such Plaintiffs is participating in the collection of or in an attempt to collect a debt such Plaintiffs allegedly owe such creditor, when in fact such person is not so participating.

**WHEREFORE** Defendants are individually and severally liable to the Plaintiffs for the following, which Plaintiffs demand as relief:

a.  Enter judgment against Defendant and in favor of Plaintiff for each violation by Defendant of the Fair Debt Collection Practices Act alleged in this Complaint;

b.  Award Plaintiff monetary civil penalties from Defendant for each violation of the Fair Debt Collection Practices Act occurring within 5 years preceding the filing of this Compliant;

c.  Enjoin Defendant from violating the Act;

d.  Order Defendant to pay the costs of this action; and

e.  Actual damages;

f.  Voiding or rescinding the entire mortgage loan transaction;

g.   Terminating or rescinding the mortgage and security interest in the property;

h.   Returning any and all monies paid by Plaintiffs including all payments made in connection with said mortgage loan transaction; and;

i.   Payment for actual damages to be determined at trial, including attorneys' fees and costs.

j.   Punitive damages.

k.   Recovery permissible under the deceptive trade practice statute of this State;

l.   Award Plaintiff such additional relief as the Court deems just and proper

## COUNT FIVE
### (Furnishing Inaccurate Information to Credit Agencies)

178.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

179.   In numerous instances, in the course and conduct of its business Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants have furnished information relating to Plaintiffs to a consumer credit reporting agency when Defendants, individually and collectively, knew or consciously avoided knowing that the information was inaccurate, and Defendants, individually and collectively, had not, clearly and conspicuously, specified to Plaintiffs an address for mailing notices disputing said information.

180.   As a consequence of the violations of Defendants, Plaintiffs suffered damages.

## COUNT SIX
### (Failure to Correct Inaccurate Reporting)

181.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

182.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants regularly and in the ordinary course of its business furnished information to one or more consumer credit reporting agencies about its transactions or experiences with Plaintiffs, and thus must comply with the provision of Section 623(a)(2) of the FCRA, and 15 U.S.C. Section 1681s-2(a)(2).

183.   In numerous instances in which Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants have furnished to a consumer reporting agency information regarding Plaintiffs, the information that Defendants, individually and collectively, have determined to be complete and accurate, is not complete and accurate.

184.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants have failed to promptly notify the consumer credit agency of that determination and provide to the agency any corrections to that information, or any additional information that was necessary to make the information provided by Defendants, individually and collectively, to the agency complete and accurate, and Defendants, individually and collectively, have thereafter furnished to the agency information that remained incomplete and inaccurate.

185.   As a consequence of the violations of Defendants, Plaintiffs suffered damages.

## COUNT SEVEN
### (Failure to Provide Required Notices and Disclaimers)

186.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

187.   On numerous occasions, in connection with the collection of debts that were in default when obtained by Defendants, their predecessors or assignors, individually or by and through

their employees, agents, or servants have failed to notify Plaintiffs of their right to dispute and obtain verification of their debt and to obtain the name of the original creditor, either in the initial communication with Plaintiffs by Defendants, individually and collectively, or within five days thereafter, in violation of Section 809(a) of the FDCPA, and 15 U.S.C. Section 1692(g)(a).

188.    As a consequence of violations of Defendants, Plaintiffs suffered damages.

### COUNT EIGHT
### (Fair Credit Reporting Act)

189.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

190.    At all times material, Defendants were in violation of FCRA, 15 U.S.C. 1681 et. seq., including but not limited, to Defendants' unlawfully accessing Plaintiffs' credit information and/or furnishing inaccurate information to credit reporting agencies.

191.    As a consequence of the violations of Defendants, Plaintiffs suffered damages.

### COUNT NINE
### (Truth in Consumer Contract, Warrant and Notice Act, N.J.S.A. 56:12-14 et seq.)

192.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

193.    Defendants gave or displayed a written notice which included a provision or provisions that violated the clearly established rights of Plaintiffs and those similarly situated as established by New Jersey law.

194.    Defendants gave or displayed written notices which included a provision or provisions that violated the clearly established rights of Plaintiffs and those similarly situated as established by New Jersey state law.

195.    By sending notices to Plaintiffs situated with provisions that Late Payment Fees and/or Overlimit Fees will be charged, or contained other provisions that are subject to applicable law and not stating whether those provisions apply in the State of New Jersey or what the applicable law in New Jersey, Defendants violated TCCWNA, N.J.S.A. 56:12-14 et seq.

196.    By sending applications and/or solicitations to Plaintiffs with required disclosures that contained provisions concerning Late Payment Fees and/or Overlimit Fees that vary from state to state that were disclosed in a manner not permitted by and in violation of TILA and its associated regulations, Defendants violated TCCWNA, N.J.S.A. 56:12-14 et seq.

197.    By sending applications and/or solicitations to Plaintiffs with required disclosures that were not clear and conspicuous as required by TILA and its associated regulations, Defendants violated TCCWNA, N.J.S.A. 56:12-14 et seq.

198.    As a consequence of the violations of Defendants, Plaintiffs suffered damages.

## COUNT TEN
### (Predatory Lending)

199.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

200.    Predatory lending is "a mismatch between the needs and capacity of the borrower.... In essence, the loan does not fit the borrower, either because the borrower's underlying needs for the loan are not being met or the terms of the loan are so disadvantageous to that particular borrower that there is little likelihood that the borrower has the capability to repay the loan. *Associates Home Equity Services, Inc. v. Troup*, 343 N.J.Super, 254778 A.2d 529 (2001); [Daniel S. Ehrenberg, *If the Loan Don't Fit, Don't Take It: Applying the Suitability Doctrine to the Mortgage Industry to Eliminate Predatory Lending,* 10 J. Affordable Housing & Community Dev. L. 117, 119-20 (Winter 2001).]

201.    At all times relevant to this complaint, Defendants were engaged in the business of marketing and otherwise selling and making mortgage or other loans for residential homes.

202.    Plaintiffs are mostly immigrants of Spanish or African descent. Plaintiffs are not wealthy and struggle to make a living in America. Many Plaintiffs have little or no income or assets. Plaintiffs are non-English speakers or speak little English and have not obtained high education background. Plaintiffs know little or nothing about mortgages.

203.    Defendants discriminated against Plaintiffs based on the race, national origin, age, gender, educational background, and wealth. Defendants discriminated against Plaintiffs and induced Plaintiffs into obtaining mortgage loans Defendants knew that, given Plaintiffs' financial circumstances, education, and background, could not repay.

204.    Defendants did advertise and publish materials, as well as conduct personal communications, whereby they enticed Plaintiffs to enter into a contract for obtaining mortgage loans.

205.    Contained in these materials were certain representations pertaining to the nature of the obligations it sold or otherwise provided to Plaintiffs.

206.    Defendants induced Plaintiffs to obtain mortgage loans that failed to meet the needs and capacity of Plaintiffs. The loans did not fit Plaintiffs. Plaintiffs were not financially sound and many Plaintiffs had little or no income and assets. There was no way Plaintiffs could meet their loan obligations.

207.    Defendants failed to provide the products, services and materials as described by the aforesaid print materials and oral representations.

208.    Defendants engaged acts of predatory lending, including but not limited, to the following:

a. Approved excessive financing which permitted Defendants to finance points, broker fees, and other costs of the closing;

b. Engaging in improper, inadequate or nonexistent "due diligence" regarding Plaintiffs' ability to repay the high cost home loan given;

c. Intentionally and improperly placing Plaintiffs into "subprime loan" products with excessively high interest rates, longer loan terms and impaired refinancing flexibility to the sole benefit of Defendants;

d. Failing to provide or inadequate providing the state and federally mandated truth-in-lending act (TILA) disclosures regarding material elements of the financing being obtained, including without limitation, matters relating to closing costs and fees, counseling services, loan terms, amortization schedules and balloon payment requirements;

e. Forging numerous loans, and;

f. Employing repeated and continuous coercive and concerted tactics by Defendants and other nonparties who stood to benefit from the loan process, which successfully targeted and forced Plaintiffs to close on the loans and the property or face significant and dire financial consequences to include losing the down payment/deposit, defaulting under the purchase contract and losing the loan commitment.

209. The terms of Plaintiffs' loans were so disadvantageous to Plaintiffs that there was little or no possibility that Plaintiffs could have the capability to repay the loans.

210. In engaging in the above conduct, Defendants committed unconscionable commercial practices, deception, fraud, falsity, or predatory lending, usury and misrepresentations in connection with the transactions at issue, under the scope of the Consumer Fraud Act,

Section 56:8-1 et seq. of the New Jersey Statutes in failing to assure these products, services and materials were rendered as represented.

211.    As a result of Defendants' unlawful conduct, Plaintiffs have suffered damage.

**COUNT ELEVEN**
**(New Jersey Licensed Lenders Act)**

212.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

213.    Each Defendant (in that each Defendant acted as its own broker) is a "mortgage broker" as defined in New Jersey Licensed Lenders Act, N.J.S.A.17:11C-2, and, therefore, subject to the requirements of N.J.S.A. 17:11C-1 et. seq. and its accompanying regulations, N.J.A.C. 3:15-1 et. seq.

214.    Notwithstanding its mortgage broker status, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants knowingly concealed information, which federal statutes and regulations required to be disclosed to Plaintiffs, their clients.

215.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants entered into mortgage transactions with Plaintiffs knowing that they would not be able to repay their loan obligation in full due to the debt to income ratio and other information shown on their respective loan applications.

216.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants fraudulently induced Plaintiffs into signing a note and mortgage that included an unconscionable loan total with the knowledge that such a requirement is contrary to applicable law and public policy.

217.   Defendants' concealments and misrepresentations were made maliciously, with knowledge of their falsity.

218.   Plaintiffs justifiably relied upon Defendants' false and fraudulent representations in making their respective mortgage loan agreements.

219.   As a result of Defendants' unlawful conduct, Plaintiffs have suffered damage.

**COUNT TWELVE**
**(12 U.S.C. Section 2605)**

220.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

221.   In numerous instances, in connection with the servicing of mortgage loans and the administration of escrow accounts of Plaintiffs, Defendants, individually and collectively, have violated the requirements of Section 6 of RESPA, and 12 U.S.C. Section 2605, specifically including the failure to:

    a.   Promptly post payments received from Plaintiffs in a timely manner;

    b.   Timely apply payments to principal and interest on Plaintiffs' accounts;

    c.   Make timely payments of escrow funds for casualty insurance premiums and property taxes, and;

    d.   Timely and adequately acknowledge, investigate and respond to Plaintiffs' qualified written requests for information about the servicing of their loans and escrow accounts.

222.   As a result of Defendants' unlawful conduct, Plaintiffs have suffered damage.

## COUNT THIRTEEN
### (New Jersey Consumer Fraud Act)

223.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

224.    Defendants made numerous misrepresentations of fact in connection with mortgage loans obtained by Plaintiffs from Defendants.

225.    Defendants made numerous misrepresentations of fact to Plaintiffs with reckless disregard of the truth and the intent to defraud, induce, and trick Plaintiffs into obtaining mortgage loans Defendants knew Plaintiffs would not be able to afford.

226.    Defendants made numerous misrepresentations of law in connection with mortgage loans obtained by Plaintiffs from Defendants.

227.    Defendants made numerous misrepresentations of law to Plaintiffs with reckless disregard of the truth and the intent to defraud, induce, and trick Plaintiffs into obtaining mortgage loans Defendants knew Plaintiffs would not be able to afford.

228.    Defendants failed to disclose and suppressed facts with reckless disregard of the truth and intent to defraud, induce, and trick Plaintiffs into obtaining mortgage loans Defendants knew Plaintiffs would not be able to afford.

229.    The facts Defendants misrepresented, omitted, suppressed, or failed to disclose were material to Plaintiffs' decisions to obtain their mortgage loans.

230.    To the extent any facts were misrepresented, omitted, suppressed, or undisclosed by third parties, Defendants remain liable because they ratified the conduct of said third parties.

231.    Defendants are sophisticated creditors in the mortgage industry with superior knowledge regarding different kinds of mortgage loans and the consequences that follow and used that superior knowledge to gain an advantage at the expense of Plaintiffs.

232.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants committed unconscionable commercial practices, fraud, and misrepresentations.

233.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants, through their knowing concealment and omission of material facts relating to the affordability of the loan, intended that Plaintiffs would rely, and Plaintiffs did rely, on such misrepresentations, concealment, and omissions.

234.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants, through their knowing misrepresentation, concealment, and/or omission of material facts relating to the affordability of the loan, intended that Plaintiffs would rely, and Plaintiffs did rely, on such misrepresentations, concealment, and omissions.

235.    Plaintiffs reasonably and in fact relied on the misrepresentations and/or omissions of Defendants. Defendants are sophisticated creditors in the mortgage industry with superior knowledge regarding different kinds of mortgage loans and the consequences that follow and used that superior knowledge to gain an advantage at the expense of Plaintiffs. Plaintiffs were justified in relying on Defendants' expertise.

236.    Specifically, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants violated the New Jersey Consumer Fraud Act by:

  a.   Failing to provide a good faith estimate to Plaintiffs in advance of the closing date or within three days of their first loan applications, thereby deceiving them about the affordability of the monthly payments;

  b.   Failing to provide accurate Truth in Lending Statements in advance of closing;

    c.  Misrepresenting to Plaintiffs that the loans were affordable, although Defendants knew or should have known that Plaintiffs had low or fixed incomes; and

    d.  Misrepresenting to Plaintiffs that the loans would provide them with an economic benefit;

237.    The actions and omissions of Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants constitute unlawful practices under New Jersey's Consumer Fraud Act, N.J.S.A 56:8-2 et seq.

238.    As a direct and proximate result of Defendants' unlawful consumer fraud:

    a.  Plaintiffs were deceived into signing the loan documents, and;

    b.  Plaintiffs have suffered an ascertainable loss of money and of equity in their homes.

239.    Defendants and their assignees and/or successors in interest are liable for the conduct of their predecessors in interest.

240.    Defendants' conduct was willful and has resulted in severe loss of money and property to Plaintiffs.

241.    Defendants' fraud in connection with the mortgage transaction entitles Plaintiffs to rescind the transactions.

**WHEREFORE** Defendants are individually and severally liable to the Plaintiffs for the following, which Plaintiffs demand as relief:

    a.  Treble damages

    b.  Actual damages;

    c.  Voiding or rescinding the entire mortgage loan transaction;

    d.  Terminating or rescinding the mortgage and security interest in the property;

e.  Returning any and all monies paid by Plaintiffs including all payments made in connection with said mortgage loan transaction; and;

f.  Payment for actual damages to be determined at trial, including attorneys' fees and costs.

g.  Punitive damages.

h.  Recovery permissible under the deceptive trade practice statute of this State;

i.  Costs and reasonable attorney's fees

j.  Out of pocket damages or costs expended by Plaintiffs in reliance on Defendants' representation

## COUNT FOURTEEN
### (Home Ownership and Equity Protection Act)

242.  Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

243.  In 1994, Congress passed high rate home equity loan protections designed to prevent predatory lending practices targeted at the vulnerable consumers. Codified at 15 U.S.C. §1639 et. seq., this law is known as the Home Ownership Equity Protection Act ("HOEPA") and covers certain high interest or high closing cost loans. Rather than create a ceiling for interest rates on these loans, HOEPA requires lenders to make certain disclosures and prohibits certain loan terms. In the event of noncompliance, HOEPA imposes civil liability on lenders for rescission and statutory and actual damages.

244.  Each Plaintiff is a "consumer" and Defendants, individually and collectively, are "creditors" as defined by HOEPA. In the mortgage transactions at issue, Plaintiff were required to pay excessive fees, expenses and costs, which exceeded more than 10% of the

amount financed. The transactions between Plaintiffs and Defendants, individually and collectively, are, therefore, subject to HOEPA.

245.    Pursuant to HOEPA, and specifically 15 U.S.C. §1639(a)(1)(b), Defendants, individually and collectively, were required to make the following disclosures to Plaintiffs conspicuously and in writing no later than three days prior to the date their respective loan transactions were consummated:

246.    "You are not required to complete this agreement merely because you received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home and any money you have put into it if you do not meet your obligation under the loan."

247.    Defendants, individually and collectively, were required to make the foregoing disclosure to Plaintiffs no later than three days prior to the closing of the transaction.

248.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants violated HOEPA with respect to Plaintiffs by various acts and omissions, including but not limited to the following: a) failure to make the foregoing disclosure in a conspicuous fashion; b) failure to file documents canceling the resulting mortgage within three days of Plaintiffs' rescission; and c) upon information and belief, engaging in a pattern or practice of extending credit to Plaintiffs, in this instance, Plaintiffs, without regard to their respective ability to repay in violation of 15 U.S.C. §1639(h) and/or (f).

249.    As a result of Defendants' unlawful conduct, Plaintiffs have suffered damage.

**WHEREFORE** By virtue of Defendants' violations of HOEPA, Plaintiffs have a right to rescind the transactions and did rescind, pursuant to 15 U.S.C. Section 1635. Moreover, this Complaint

constitutes Plaintiffs' additional notice of rescission of the note and mortgage. Therefore, under 15 U.S.C. Section 1635 and Section 1640 or use Section 1640(a)(1)(3) and (4), Defendants, individually and collectively, are liable to Plaintiffs for: a) rescission of the applicable mortgage loan transaction; b) termination of the mortgage and security interest in the property created under said transaction; c) return of any money or property paid by Plaintiffs to anyone in connection with the transaction; d) twice the finance charge paid or applied in connection with the transaction; e) the right to retain proceeds; and f) actual damages in an amount to be determined at trial, including attorney fees.

## COUNT FIFTEEN
### (Equal Credit Opportunity Act)

250.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

251.    12 C.F.R. 202.4(a) and 12 C.F.R. 202.5(a)(2) provide, among other things, that residential lenders are required to collect information for monitoring purposes for credit secured by the applicant's dwelling.

252.    Upon information and belief, Defendants failed to collect the information required by the foregoing statues in order to complete the applications for the loan secured by Plaintiffs' dwellings.

253.    As such, Defendants, individually and collectively committed one or more violations for the foregoing statues, commonly referred to as the Equal Credit Opportunity Act.

254.    Plaintiffs were harmed and continue to be harmed by Defendants' actions because of Defendants' failure to comply with the foregoing regulations governing the issuance of such loans.

255. Upon information and belief, Defendants' actions were made intentionally and, as such, malicious and with a reckless disregard for the Plaintiffs' rights under these statutes.

256. As a result of Defendants' unlawful conduct, Plaintiffs have suffered damage.

257. As such, Plaintiffs are, furthermore, entitled to punitive damages as a remedy for Defendants' reckless actions.

### COUNT SIXTEEN
**(Unfair Business Practices)**

258. Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

259. Defendants are conducting business in the state of New Jersey and engaged in obtaining, making, and/or facilitating residential real estate loans.

260. There exists a fiduciary relationship between Defendants and Plaintiffs. Therefore, Defendants had a duty to disclose all material terms to Plaintiffs regarding the mortgage loans and associated documents. The parties' relationship is a relationship of trust and confidence between Plaintiffs and Defendants. Defendants had a fiduciary duty to Plaintiffs as the contracts and transactions Defendants and Plaintiffs were involved in call for full disclosure and perfect good faith between the parties. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997).

261. Defendants have engaged in unscrupulous business conduct, unethical business conduct, oppressive business conduct, and conduct without any business justification against Plaintiffs in violation of N.J.S.A. 56:8-1.

262. Defendants have engaged in deceptive business practices that include making misrepresentations of fact tending to deceive Plaintiffs and causing Plaintiffs to make decisions they otherwise would not have made had they been told the truth.

263.   Specifically, Defendants' deceptive and unfair business practices include:

   a.   Failing to comply with the statutory provisions of the Equal Credit Opportunity Act (ECOA), Truth In Lending Act (TILA), and Real Estate Settlement Procedures Act (RESPA), as fully set forth hereinabove;

   b.   Failing to make all legally required disclosures, including but not limited to Plaintiffs not receiving the required disclosures set forth hereinabove;

   c.   Failing to offer other loan products that might be more advantageous for Plaintiffs under the same qualifying matrix;

   d.   Failing to properly and competently underwrite Plaintiffs' loans;

   e.   Failing to exhaust the due diligence foreclosure requirements, and;

   f.   Unlawfully attempting to foreclose on the subject Properties.

264.   Defendants have engaged in the particular deceptive business practice known as bait and switch.

265.   Under bait and switch, Defendants induced Plaintiffs commit to mortgage loans under a set of terms: a certain interest rate, a fixed or adjustable mortgage with a specified frequency and method of adjustment; length of loan; and so forth. But Plaintiffs discovered at closing that their loan documents now specify a number of terms to which they had not agreed to, such as a higher rate, more frequent adjustment, a five year note with a balloon.

266.   However, at that point, Plaintiffs are unable to locate their loan originators and are put under incredible pressure from the sellers. Plaintiffs signed the documents under such pressure and hoped to have the various discrepancies in the loan documents resolved later. However, now that the note and mortgage are signed, Plaintiffs are trapped and lack the knowledge, money, and wherewithal to resolve those problems.

267.    Defendants' conduct was willful and has resulted in severe loss of money and property to Plaintiffs.

**WHEREFORE** Defendants are individually and severally liable to the Plaintiffs for the following, which Plaintiffs demand as relief:

    a.  Voiding or rescinding the entire mortgage loan transaction;

    b.  Terminating or rescinding the mortgage and security interest in the property;

    c.  Returning any and all monies paid by Plaintiffs including all payments made in connection with said mortgage loan transaction; and;

    d.  Payment for actual damages to be determined at trial, including attorneys' fees and costs.

    e.  Punitive damages.

### <u>COUNT SEVENTEEN</u>
**(Racketeer Influenced and Corrupt Organizations Act)**

268.    Defendants violated the federal RICO 18 U.S.C. 1962(a)-(d). RICO encompasses fraud claims that typically arise in business litigation.

269.    Defendants are "enterprises" as defined under 18 U.S.C. 1962. Defendants are individuals, partners, corporations, associations, or other legal entities through which Defendants conducted patterns of racketeering activity or into which profits from the racketeering are invested. Defendants are "ongoing organizations" whose associates function as a continuing unit and whose identities are separate and apart from the pattern of activity in which they engages.

270.    Defendants' predecessors or assignors, individually or by and through their employees, agents, or servants are persons prohibited from being "employed by or associated with"

Defendant enterprises and engaging in the affairs of the enterprises through a pattern of racketeering activity.

271.   Defendants generated income derived from a pattern of racketeering or from the collection of an unlawful debt and use the income to invest in Defendant enterprises in violation of 18 U.S.C. 1962(a).

272.   Defendants engaged in activities which affect interstate or foreign commerce through a pattern of racketeering activity or the collection of an unlawful debt in violation of 18 U.S.C. 1962(b).

273.   Persons employed by or associated with Defendant enterprises engaged in activities which affect interstate commerce through a pattern of racketeering activity or the collection of an unlawful debt in violation of 18 U.S.C. 1962(c).

274.   Defendants conspire in order to violate the provisions in 18 U.S.C. 1962(a), (b), and (c).

275.   Defendants participated in the affairs of their enterprise through a pattern of racketeering activity. Said "pattern" consists of the commission of at least two predicate offenses, as specified in 18 U.S.C. 1961(1).

276.   Defendants' offenses include, but are not limited to:

a.  Engaging in deceptive and unfair business practices that include making misrepresentations of fact tending to deceive Plaintiffs and causing Plaintiffs to make decisions they otherwise would not have made had they been told the truth;

b.  Failing to comply with the statutory provisions of the Equal Credit Opportunity Act (ECOA), Truth In Lending Act (TILA), and Real Estate Settlement Procedures Act (RESPA), as fully set forth hereinabove;

c.  Failing to make all legally required disclosures, including but not limited to Plaintiffs not receiving the required disclosures set forth hereinabove;

d.  Failing to offer other loan products that might be more advantageous for Plaintiffs under the same qualifying matrix;

e.  Failing to properly and competently underwrite Plaintiffs' loans;

f.  Failing to exhaust the due diligence foreclosure requirements, and;

g.  Unlawfully attempting to foreclose on the subject Properties.

h.  Engaging in the particular deceptive business practice known as bait and switch.

i.  Generating income derived from a pattern of racketeering or from the collection of an unlawful debt and use the income to invest in Defendant enterprises;

j.  Engaging in activities which affect interstate or foreign commerce through a pattern of racketeering activity or the collection of an unlawful debt;

k.  Engaging in activities which affect interstate commerce through a pattern of racketeering activity or the collection of an unlawful debt through persons employed by or associated with Defendant enterprises;

l.  Recruiting individuals with good credit ratings to participate in real estate transactions through false promises, and using their identities and credit history to obtain financing for real estate transactions with inflated sales prices;

m.  Submitting false information to lenders regarding income, assets and intent to reside at a property on loan applications in order to obtain financing for these transactions;

n.  Obtaining and creating fraudulent and inflated real estate appraisals and submitting these appraisals to lenders in order to obtain an amount of financing for transactions that lenders would not have otherwise provided;

    o. Accepting commissions on mortgage loans which were approved based on fraudulent information and appraisals;

    p. Falsifying closing documents to disguise the true location and circumstances surrounding the closing of the transactions, and;

    q. Taking unwarranted proceeds from the mortgage loans on false pretenses.

277. Defendants' racketeering acts are related and amount to or pose a threat of continued activity. Defendants' racketeering acts are related because they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

278. Defendants' racketeering acts are continuous pose a threat of continued activity. *H.J., Inc. v. Northwestern Bel Telephone Co.*, 492 U.S. 229 (1989).

279. Defendants' racketeering acts were accomplished though periods of repeated past or present conduct and project into the future a threat of repetition.

280. Defendants' racketeering acts involve past racketeering activity over a substantial period of time and pose a threat of continuity in the future.

**WHEREFORE** Plaintiffs demand Judgment in his favor and against Defendants, for the following:

    a. Treble damages

    b. Compensatory damages;

    c. Punitive damages;

    d. Prejudgment interest;

    e. Injunctive relief

    f. Counsel fees and cost of suit;

g.   Such other relief as this Court deems just and equitable.

## COUNT EIGHTEEN
### (New Jersey RICO)

281.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

282.   Defendants violated the New Jersey RICO, N.J.S.A. §2C:41-1 et. seq. N.J.S.A. §2C:41-1 et seq. authorizes the institution of a civil action for violations of N.J.S.A. §2C:41-2, including the collection of an unlawful debt pursuant to a pattern of racketeering activity. N.J.S.A. §2C:41-2(a).

283.   As set forth above, Defendants are "enterprises" within the statutory scheme and have engaged in a pattern of corrupt activity in order to seek the collection of an unlawful debt from Plaintiffs.

284.   The conspiracy the subject of this action has existed from 2004 to the present, with the injuries and damages resulting therefrom being continuing.

285.   Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiffs constitute an "enterprise," with the aim and objective of the enterprise being to perpetrate a fraud upon Plaintiffs through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents.

286.   Defendants' predecessors or assignors, individually or by and through their employees, agents, or servants are persons prohibited from being "employed by or associated with" Defendant enterprises and engaging in the affairs of the enterprises through a pattern of racketeering activity.

287.   Defendants engaged in a pattern of racketeering acts, including fraudulent conduct with same or similar purposes, methods of commission, results, participants victims, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents. Defendants engaged in a series of long-term fraudulent conduct showing a continuity of activity.

288.   Defendants' racketeering conduct includes, but is not limited to:

    a.   Engaging in deceptive and unfair business practices that include making misrepresentations of fact tending to deceive Plaintiffs and causing Plaintiffs to make decisions they otherwise would not have made had they been told the truth.

    b.   Failing to comply with the statutory provisions of the Equal Credit Opportunity Act (ECOA), Truth In Lending Act (TILA), and Real Estate Settlement Procedures Act (RESPA), as fully set forth hereinabove;

    c.   Failing to make all legally required disclosures, including but not limited to Plaintiffs not receiving the required disclosures set forth hereinabove;

    d.   Failing to offer other loan products that might be more advantageous for Plaintiffs under the same qualifying matrix;

    e.   Failing to properly and competently underwrite Plaintiffs' loans;

    f.   Failing to exhaust the due diligence foreclosure requirements, and;

    g.   Unlawfully attempting to foreclose on the subject Properties.

    h.   Engaging in the particular deceptive business practice known as bait and switch.

    i.   Generating income derived from a pattern of racketeering or from the collection of an unlawful debt and use the income to invest in Defendant enterprises;

j.   Engaging in activities which affect interstate or foreign commerce through a pattern of racketeering activity or the collection of an unlawful debt;

k.   Engaging in activities which affect interstate commerce through a pattern of racketeering activity or the collection of an unlawful debt through persons employed by or associated with Defendant enterprises;

l.   Conspiring in order to violate the provisions of the New Jersey RICO;

m.   Recruiting individuals with good credit ratings to participate in real estate transactions through false promises, and using their identities and credit history to obtain financing for real estate transactions with inflated sales prices;

n.   Submitting false information to lenders regarding income, assets and intent to reside at a property on loan applications in order to obtain financing for these transactions;

o.   Obtaining and creating fraudulent and inflated real estate appraisals and submitting these appraisals to lenders in order to obtain an amount of financing for transactions that lenders would not have otherwise provided;

p.   Accepting commissions on mortgage loans which were approved based on fraudulent information and appraisals;

q.   Falsifying closing documents to disguise the true location and circumstances surrounding the closing of the transactions, and;

r.   Taking unwarranted proceeds from the mortgage loans on false pretenses.

289.   Defendants' racketeering acts are related and amount to or pose a threat of continued activity. Defendants' racketeering acts are related because they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

290.   Defendants' racketeering acts are continuous pose a threat of continued activity. Defendants' racketeering acts were accomplished though periods of repeated past or present conduct and project into the future a threat of repetition.

291.   Defendants' racketeering acts involve past racketeering activity over a substantial period of time and pose a threat of continuity in the future.

**WHEREFORE** Plaintiffs demand Judgment in his favor and against Defendants, for the following:

   a.   Treble damages

   b.   Compensatory damages;

   c.   Punitive damages;

   d.   Prejudgment interest;

   e.   Counsel fees and cost of suit;

   f.   Such other relief as this Court deems just and equitable.

**COUNT NINETEEN**
**(Breach of Fiduciary Duties)**

292.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

293.   There exists a fiduciary relationship between Defendants and Plaintiffs. Therefore, Defendants had a duty to disclose all material terms to Plaintiffs regarding the mortgage loans and associated documents. The parties' relationship is a relationship of trust and confidence between Plaintiffs and Defendants. Defendants had a fiduciary duty to Plaintiffs as the contracts and transactions Defendants and Plaintiffs were involved in call for full disclosure and perfect good faith between the parties. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997).

294. Defendants breached their fiduciary duties to Plaintiffs.

295. Defendants breached their fiduciary duties owed to Plaintiffs in one or more of the following ways, as well as ways mentioned above:

   a. Defendants did not disclose all of the loan terms to Plaintiffs.

   b. Defendants did not make sure that Plaintiffs understood all of the loan terms before entering into these transactions.

   c. Upon information and belief, Defendants placed Plaintiffs into "no document" verification loans, whereby they would be charged interest higher than what they could have qualified for if proper underwriting review occurred.

   d. Defendants made sure that they placed Plaintiffs into loans with large mortgage broker compensation, sometimes referred to as "yield spread premiums" so that Defendants could maximize the compensation that they received as a result of these re-finances regardless of the harm to Plaintiffs.

   e. Defendants otherwise placed their own interests ahead of Plaintiffs' interests.

296. The acts and omissions aforesaid constitute a breach of their fiduciary duties to Plaintiffs.

297. As a consequence of Defendants' breach of fiduciary duties, Plaintiffs suffered damages.

## COUNT TWENTY
### (Breach of Contract)

298. Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

299. Mortgage and promissory notes between Defendants and Plaintiffs are contracts that Defendants breached.

300. The foregoing conduct of Defendants against Plaintiffs constitutes an actionable breach of contract.

301.    As a consequence of Defendants' breach, Plaintiffs suffered damages.

## COUNT TWENTY ONE
### (Breach of the Covenant of Good Faith and Fair Dealing)

302.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

303.    There exists a fiduciary relationship between Defendants and Plaintiffs. Therefore, Defendants had a duty to disclose all material terms to Plaintiffs regarding the mortgage loans and associated documents. The parties' relationship is a relationship of trust and confidence between Plaintiffs and Defendants. Defendants had a fiduciary duty to Plaintiffs as the contracts and transactions Defendants and Plaintiffs were involved in call for full disclosure and perfect good faith between the parties. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997).

304.    Defendants covenanted to and were required to act in good faith and to act fairly in their dealings with Plaintiffs.

305.    Defendants breached these covenants and requirements.

306.    As a result of these actions, Plaintiffs were harmed.

## COUNT TWENTY TWO
### (Unconscionability)

307.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

308.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants engaged in unconscionable practices, both procedural and substantively.

309.    Prior to and during the time of the loan transactions, there existed a disparity in bargaining power between Plaintiff borrowers and Defendant lenders. Plaintiffs have limited understanding and knowledge of the mortgage industry. Defendants, their employees, agents, or servants are sophisticated mortgage lenders, brokers, and agents with advanced training and expertise in the mortgage and finance industry.

310.    Procedurally, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants intentionally misrepresented, or failed to disclose, material information about the affordability of the monthly payments of the loans, by not providing a good faith estimate in advance of the closing; thereby depriving Plaintiffs of material information of which they were unaware, and depriving Plaintiffs of information that might have reduced the disparity in bargaining power between the parties.

311.    Procedurally, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants failed to provide Plaintiffs with certain notices of rights to rescind, thereby depriving them of the statutory right to cancel the contract, and also depriving them of a procedure that might have reduced the disparity in bargaining power between the parties.

312.    Procedurally, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants completed loan applications for, or extended credit to, Plaintiffs on the basis of the value of their homes, rather than on their ability to pay. In doing so, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants knew from information that they received that Plaintiffs were unlikely to make any mortgage payments. In addition, Defendants failed to obtain sufficient information to determine if Plaintiffs would be able to make these mortgage payments, and

qualified Plaintiffs for "no document" loans which were not the appropriate financing vehicle for individuals on fixed or low incomes.

313.    Procedurally, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants failed to follow underwriting procedures in requiring proof that Plaintiffs would be able to make the monthly payments.

314.    Procedurally, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants offered Plaintiffs "no document" loans where Plaintiffs' equity in their homes were to be the sole source of proof of their ability to repay the entire loan.

315.    Procedurally, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants induced Plaintiffs to attend real estate closings without attorneys who could explain to them the true nature and terms of the loan and protect them from the above identified unconscionable practices, and who could have reduced the disparity in bargaining power between the parties.

316.    Procedurally, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants also prevented Plaintiffs from reviewing and thereby better understanding the loan documents at the closing as they "rushed" the entire process.

317.    Procedurally, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants misrepresented, or failed to disclose that the mortgage loan transaction contained padded points and fees that were not reasonably related to the actual services rendered. Moreover, Defendants arranged for said points and fees to be paid to themselves and/or their affiliate companies.

318.   Procedurally, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants engaged in high pressure sales tactics that were designed to, and did, induce Plaintiffs to enter into fraudulent loan transactions.

319.   Given the disparity of bargaining power between the parties and the imbalance in the understanding of the parties, the above identified procedural unconscionability was intended to, and did, cause Plaintiffs to have a lack of meaningful choice in connection with the loan transactions in question.

320.   Substantively, the loan terms provided by Defendants:

    a.   Skimmed off the equity in Plaintiff's homes;

    b.   Provided little or no economic benefit to Plaintiffs;

    c.   Were padded with excessive points and fees that were paid to Defendants and affiliated third parties, and were not reasonably related to the services rendered;

    d.   Contained base interest rates that were not commensurate with the usual and customary rates charged for sub-prime loans;

    e.   Qualified Plaintiffs for "no document" loans which they should not have been offered, and;

    f.   Placed Plaintiffs in jeopardy of losing their homes to the present foreclosure, which represented the collateral for the loans.

321.   Plaintiffs reasonably relied on Defendants' described unconscionable practices, which proximately caused them injury.

322.   The above described unconscionable practices render void and unenforceable the mortgage loan transactions entered into between Plaintiffs and Defendants, their predecessors in interest and/or assignors.

323.    In addition, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants breached the covenant of good faith and fair dealing implied in all contracts.

324.    Assignees of the Mortgage are liable for the conduct of the predecessors and/or assignors.

325.    As a result of Defendants' unlawful conduct, Plaintiffs have suffered damage.

### COUNT TWENTY THREE
**(Legal Fraud)**

326.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

327.    Plaintiffs have pled claims of fraud with sufficient particularity to meet the enhanced pleading standard of Fed.R.Civ.P. 9(b).

328.    Elements of common law fraud under New Jersey law are: (1) material misrepresentation of presently existing or past fact; (2) knowledge or belief by defendant of its falsity; (3) intention that other person relies on it; (4) reasonable reliance thereon by other person; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997).

329.    Defendants made numerous material misrepresentations to Plaintiffs including, but not limited to the following: that the mortgage loans Defendants presented to Plaintiffs were affordable, that Plaintiffs could afford their mortgage loans, and that the mortgage loans were in Plaintiffs' best interests.

330.    Specifically, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants:

a.  Failed to provide a good faith estimate to Plaintiffs in advance of the closing date or within three days of their first loan applications, thereby deceiving them about the affordability of the monthly payments;

b.  Failed to provide accurate Truth in Lending Statements in advance of closing;

c.  Misrepresented to Plaintiffs that the loans were affordable, although Defendants knew or should have known that Plaintiffs had low or fixed incomes; and

d.  Misrepresented to Plaintiffs that the loans would provide them with an economic benefit;

331.   The above described conduct and actions constitute common law fraud by way of misrepresentations, concealment and omissions of material facts made by Defendants in the lending of the Class mortgages which are the subject of this action.

332.   Defendants, upon information and belief, made the above- described misrepresentations, concealment and omissions of material facts concerning its lending practices with full knowledge that they were false and misleading or with reckless disregard of the truth.

333.   Defendants had knowledge of falsity of statements. Defendants knew mortgage loans were not affordable, and specifically that Plaintiffs could not meet the loan obligations. Defendants knew mortgage loans were not in Plaintiffs' best interests.

334.   Defendants intended that the Plaintiffs and the other members of the Class rely upon the above-described misrepresentations, concealment and omissions. Defendants made misrepresentations to Plaintiffs with intent to defraud, induce and trick Plaintiffs into obtaining the mortgage loans. Defendants made misrepresentations to Plaintiffs with reckless disregard of the truth. Defendants knew that Plaintiffs would not obtain the loans had they been told the truth.

335.    Defendants knew of the falsity of their representations to Plaintiffs and intended that Plaintiffs rely on those representations.

336.    Defendants' misrepresentations, concealments and omissions concerning the affordability of the mortgage and their expert knowledge of the illegal mortgages were material in Plaintiffs' and the other Class member's decision to have the mortgages from the lending institution. Defendants are sophisticated creditors in the mortgage industry with superior knowledge to Plaintiffs. Plaintiffs reasonably relied on the expertise of Defendants to obtain a mortgage in their best interests.

337.    The Plaintiffs and other Class members justifiably relied upon such misrepresentations, concealment and omissions to their damage and detriment.

338.    Plaintiffs and the Class suffered the damage described in this complaint as a proximate result thereof. Defendants' conduct was willful, wanton, and reckless. Based    on    the intentionally dishonest nature of Defendants' conduct, which was directed at the Class and at the public generally, Defendants should also be held liable to the Class for punitive damages in an amount to be determined at trial.

339.    Defendants and their assignees and/or successors in interest are liable for the conduct of their predecessors in interest.

340.    Defendants are not excused from their fraudulent conduct merely because Plaintiffs might have discovered the fraud through diligence or investigation. Jewish Ctr. Of Sussex Cnty., v Whale, 86 N.J.619, 626 (1981).

341.    Defendants' conduct was willful and has resulted in severe loss of money and property to Plaintiffs.

**WHEREFORE** Defendants are individually and severally liable to the Plaintiffs for the following, which Plaintiffs demand as relief:

    a.  Actual damages;

    b.  Voiding or rescinding the entire mortgage loan transaction;

    c.  Terminating or rescinding the mortgage and security interest in the property;

    d.  Returning any and all monies paid by Plaintiffs including all payments made in connection with said mortgage loan transaction;

    e.  Payment for actual damages to be determined at trial, including attorneys' fees and costs;

    f.  Punitive damages;

    g.  Recovery permissible under the deceptive trade practice statute of this State;

    h.  Costs and reasonable attorney's fees;

    i.  Out of pocket damages or costs expended by Plaintiffs in reliance on Defendants' representation

**COUNT TWENTY FOUR**
**(Equitable Fraud)**

342.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

343.   Equitable fraud does not require a showing of the element of scienter.

344.   Elements of equitable fraud require: (1) a material misrepresentation of a presently existing or past fact; (2) that Plaintiffs relied on; (3) to their detriment.

345.   Defendants made numerous material misrepresentations to Plaintiffs including, but not limited to the following: that the mortgage loans Defendants presented to Plaintiffs were

affordable, that Plaintiffs could afford their mortgage loans, and that the mortgage loans were in Plaintiffs' best interests.

346. Specifically, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants:

    a. Failed to provide a good faith estimate to Plaintiffs in advance of the closing date or within three days of their first loan applications, thereby deceiving them about the affordability of the monthly payments;

    b. Failed to provide accurate Truth in Lending Statements in advance of closing;

    c. Misrepresented to Plaintiffs that the loans were affordable, although Defendants knew or should have known that Plaintiffs had low or fixed incomes; and

    d. Misrepresented to Plaintiffs that the loans would provide them with an economic benefit;

347. Plaintiffs relied on Defendants' fraudulent representations. Plaintiffs' reliance on Defendants' fraudulent representation was actual and can be inferred from the circumstances.

348. As a direct and proximate result of Defendants' unlawful consumer fraud:

    a. Plaintiffs were deceived into signing the loan documents, and;

    b. Plaintiffs have suffered an ascertainable loss of money and of equity in their homes.

349. Plaintiffs reasonably relied on Defendants' misrepresentations. Defendants are sophisticated creditors in the mortgage industry with superior knowledge to Plaintiffs. Plaintiffs reasonably relied on the expertise of Defendants to obtain a mortgage in their best interests.

350. Plaintiffs have pled their claims of fraud and other misconduct with sufficient particularity to meet the enhanced pleading standard of Fed.R.Civ.P. 9(b).

351.    Defendants and their assignees and/or successors in interest are liable for the conduct of their predecessors in interest.

352.    Defendants' conduct was willful and has resulted in severe loss of money and property to Plaintiffs.

**WHEREFORE** Defendants are individually and severally liable to the Plaintiffs for the following, which Plaintiffs demand as relief:

    a.  Actual damages;

    b.  Voiding or rescinding the entire mortgage loan transaction;

    c.  Terminating or rescinding the mortgage and security interest in the property;

    d.  Returning any and all monies paid by Plaintiffs including all payments made in connection with said mortgage loan transaction; and;

    e.  Payment for actual damages to be determined at trial, including attorneys' fees and costs.

    f.  Punitive damages.

    g.  Recovery permissible under the deceptive trade practice statute of this State;

    h.  Costs and reasonable attorney's fees

    i.  Out of pocket damages or costs expended by Plaintiffs in reliance on Defendants' representation

### COUNT TWENTY FIVE
**(Negligent and Intentional Misrepresentation)**

353.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

354.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants are creditors involved in consumer credit transactions. During

the course of the Defendants' dealings with Plaintiffs, Defendants, individually and collectively, entered into a relationship of trust and confidence with Plaintiffs.

355.   Plaintiffs are purchasers of residential properties and sought Defendants services and assistance to obtain mortgage loans on those properties.

356.   There exists a fiduciary relationship between Defendants and Plaintiffs. Therefore, Defendants had a duty to disclose all material terms to Plaintiffs regarding the mortgage loans and associated documents. The parties' relationship is a relationship of trust and confidence between Plaintiffs and Defendants. Defendants had a fiduciary duty to Plaintiffs as the contracts and transactions Defendants and Plaintiffs were involved in call for full disclosure and perfect good faith between the parties. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997).

357.   Defendants had knowledge that Plaintiffs were relying on the advice and expertise of Defendants to obtain mortgage loans in the best interests of Plaintiffs. Defendants are sophisticated creditors in the mortgage industry with superior knowledge regarding different kinds of mortgage loans and the consequences could follow depending on the kind of mortgage Plaintiffs obtained.

358.   Defendants induced Plaintiffs to obtain certain mortgage loans that Defendants represented to Plaintiffs were affordable given Plaintiffs' income and assets and were in Plaintiffs' best interests.

359.   At that time, Defendants had knowledge that Plaintiffs would be unable to afford the mortgage loans recommended by Defendants and would cause Plaintiffs to default and be subject to foreclosure.

360.   Defendants knew that several statements Defendants made regarding the mortgage loans were false and intended that Plaintiffs would be induced by these false misrepresentations to obtain said mortgage loans and later default on their obligations.

361.   Defendants knew that the statements made by Defendants designed to induce Plaintiffs into obtaining those mortgage loans were material to Plaintiffs' decisions to enter upon those obligations and that Plaintiffs would not be interested in obtaining those loans had Plaintiffs been given all the true and accurate facts regarding the loans.

362.   Defendants were obliged to disclose the true facts regarding mortgage loans given to Plaintiffs, but intentionally misrepresented and/or deliberately concealed the true facts.

363.   Plaintiffs believed and reasonably relied upon Defendants' misrepresentations as to facts surrounding the mortgage loans.

364.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants made negligent and intentional misrepresentations to Plaintiffs upon which Plaintiffs reasonably relied. Further, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants were negligent in dealing with Plaintiffs. Defendants' negligence included but was not limited to the following:

   a.   Failure to advise Plaintiffs that Defendants, individually and collectively, would receive substantial fees in connection with their respective transactions;

   b.   Providing Plaintiffs with inaccurate and improper advice as to maximizing the value of Plaintiffs' respective properties;

   c.   Failure to fully and completely disclose and explain the history and details of Defendants' relationship with all parties to each transaction; and

     d.  Failure to take the utmost and/or reasonable care, caution, and diligence to protect the best interests of Plaintiffs.

365.    As a result of Defendants' efforts regarding the transactions described in this Complaint, and further, as a direct result of the misrepresentations of Defendant concerning the mortgage loans, Plaintiff obtained loans under pressure and misrepresentations of Defendants.

366.    After Plaintiffs obtained said mortgage loans, it became clear to Plaintiffs soon thereafter that Defendants had misrepresented the facts surrounding the loans, as Plaintiffs realized they could not meet their loan obligations.

367.    As a direct consequence of Defendant's conduct, and further, as a direct result of the misrepresentations of Defendant concerning the profitability of the Property, Plaintiff has incurred substantial costs and expenses, and has suffered damages, including, but not limited to, the loss of the Property had the mortgage loans been as represented by Defendant.

368.    Throughout the course of Defendants' collective and individual relationship with Plaintiffs, Defendants acted with the sole motivation of increasing their fees and compensation and with intentional and malicious disregard for Plaintiffs' best interests.

369.    As a direct and proximate result of Defendants' collective and individual negligence and negligent misrepresentations, Plaintiffs have suffered damages.

## COUNT TWENTY SIX
### (Fraudulent Misrepresentation or Concealment)

370.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

371.    There exists a fiduciary relationship between Defendants and Plaintiffs. Therefore, Defendants had a duty to disclose all material terms to Plaintiffs regarding the mortgage loans and associated documents. The parties' relationship is a relationship of trust and

confidence between Plaintiffs and Defendants. Defendants had a fiduciary duty to Plaintiffs as the contracts and transactions Defendants and Plaintiffs were involved in call for full disclosure and perfect good faith between the parties. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997).

372.    Defendants had the ability and opportunity to exercise care with Plaintiffs and failed to do so. Defendants embarked Plaintiffs on highly risky loan obligations knowing that Plaintiffs would be unable to meet said loan obligations. Defendants' conduct goes against the public interest.

373.    Defendants are liable for fraudulent concealment for failing to disclose material facts that they had a duty to disclose. "…Suppression of truth, the withholding of the truth when it should be disclosed, is equivalent to the expression of falsehood. *Jewish Ctr. Of Sussex Cnty., v Whale*, 86 N.J.619, 626 (1981)

374.    Defendants, by knowingly and intentionally making false statements of material facts about the mortgage loans given to Plaintiffs, including fraudulent misrepresentations as to the payments required to be made by Plaintiffs, and/or by engaging in the deliberate concealment or nondisclosure of material facts necessary for his statements not to be false or misleading, induced Plaintiffs to enter into loan obligations on their properties.

375.    Defendants deliberately concealed and failed to disclose material facts or defects readily observable by Defendants in the mortgage documents. Defendants' nondisclosures went to a basic assumption upon which contracts and agreements between Defendants and Plaintiffs were made. Defendants' behavior in entering into such contracts and agreements with Plaintiffs evidences a lack of good faith dealing.

376.    Defendants acted with the intention that Plaintiffs would rely upon said misrepresentations and/or concealments or nondisclosures of material facts in obtaining said loans and later be unable to meet their loan obligations. Defendants' misrepresentations and/or concealments or nondisclosures concerned presently existing facts which were material to the decision of Plaintiffs to obtain said loans.

377.    Defendants, by their intentional misrepresentations and/or deliberate and fraudulent concealments or nondisclosures of material facts, induced Plaintiffs to enter into loan obligations and/or lulled Plaintiffs into thinking that they had not been defrauded.

378.    Plaintiffs relied upon Defendants' representations and nondisclosures to their detriment. Plaintiffs justifiably relied upon Defendants' misrepresentations and/or concealments or nondisclosures of material facts in concluding that the mortgage loans recommended by Defendants were in Plaintiffs' best interests.

379.    Plaintiffs have been injured as a proximate result of Defendants' fraudulent misrepresentations and/or concealments or nondisclosures of material facts in that he has purchased Property materially different from that which was represented to him, to wit, the value of the mortgage payments is radically different from that which was represented to him, i.e., income-producing property that has previously generated, and likely would continue to generate, a reasonable annual net profit.

**WHEREFORE** Plaintiffs demand Judgment in his favor and against Defendants, for the following:

      a.   Compensatory damages;

      b.   Punitive damages;

      c.   Prejudgment interest;

d.   Counsel fees and cost of suit;

e.   Such other relief as this Court deems just and equitable.

### COUNT TWENTY SEVEN
#### (Negligent Misrepresentation or Concealment)

380.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

381.   There exists a fiduciary relationship between Defendants and Plaintiffs. Therefore, Defendants had a duty to disclose all material terms to Plaintiffs regarding the mortgage loans and associated documents. The parties' relationship is a relationship of trust and confidence between Plaintiffs and Defendants. Defendants had a fiduciary duty to Plaintiffs as the contracts and transactions Defendants and Plaintiffs were involved in call for full disclosure and perfect good faith between the parties. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997).

382.   In inducing Plaintiffs to enter into certain loan obligations on their properties, Defendants made misrepresentations of material facts and/or engaged in the concealment or nondisclosure of material facts necessary for his statements not to be false or misleading, in failing to apprise Plaintiffs of the true facts, known or reasonably ascertainable by Defendant, regarding the financial obligations and consequences of the mortgage loans.

383.   Defendants failed to exercise reasonable care in making these misrepresentations and/or engaging in these concealments or nondisclosure, in view of the fact that Plaintiffs had little or no income and few or no assets, Plaintiffs requested such information from Defendants regarding mortgage loans suggested by Defendants, and Defendants knew that Plaintiffs would only be interested in entering into those loan obligations if Plaintiffs could afford them.

384.    Defendants knew, or in the exercise of reasonable care should have known, that Plaintiffs would reasonably rely upon Defendants' misrepresentations and/or concealments or nondisclosures in obtaining the mortgage loans.

385.    Defendants' misrepresentations and/or concealments or nondisclosures concerned presently existing facts which were material to the decision of Plaintiffs to obtain the mortgage loans.

386.    Defendants, by their negligent misrepresentations and/or concealments or nondisclosures, induced Plaintiffs to obtain the mortgage loans and/or lulled Plaintiffs into thinking that they had not been defrauded.

387.    Plaintiffs justifiably relied upon Defendants' misrepresentations and/or concealments or nondisclosures in concluding that the mortgage loans were affordable by Plaintiffs and in Plaintiffs' best interests.

388.    Plaintiffs have been injured as a proximate result of Defendants' negligent misrepresentations and/or concealments or nondisclosures in that Plaintiffs were given mortgage loans materially different from that which were represented to them.

**WHEREFORE** Plaintiffs demand Judgment in his favor and against Defendants, for the following:

        a.    Compensatory damages;

        b.    Prejudgment interest;

        c.    Counsel fees and cost of suit;

        d.    Such other relief as this Court deems just and equitable.

## COUNT TWENTY EIGHT
### (Negligent Lending)

389.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

390.   There exists a fiduciary relationship between Defendants and Plaintiffs. Therefore, Defendants had a duty to disclose all material terms to Plaintiffs regarding the mortgage loans and associated documents. The parties' relationship is a relationship of trust and confidence between Plaintiffs and Defendants. Defendants had a fiduciary duty to Plaintiffs as the contracts and transactions Defendants and Plaintiffs were involved in call for full disclosure and perfect good faith between the parties. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997).

391.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants engaged in negligent lending. Defendants had a duty to use reasonable care when dealing with Plaintiffs during the mortgage transaction and they breached this duty by failing to:

   a.   Inform Plaintiffs of the nature and terms of these transactions;

   b.   Arrange for and obtain mortgage loans that Plaintiffs could afford based on their income;

   c.   Reasonably investigate Plaintiffs' financial circumstances;

   d.   Deny the application for credit when it was unsupported by any income;

   e.   Offer more than one refinance package or an alternative refinance vehicle for which Plaintiffs were qualified, such as a reverse mortgage, and;

   f.   Comply with all state and federal laws.

392.     Defendants were negligent in that they carelessly and recklessly initiating arranged and consummated said mortgages.

393.     Through misrepresentations and omissions of material information, Defendants negligently induced Plaintiffs to enter into these mortgage transactions which have culminated in the present foreclosures.

394.     Defendants failed to obtain loans for Plaintiffs based upon their ability to pay.

395.     It was foreseeable to Defendants that Plaintiffs would be unable to make the monthly payments on these loans.

396.     Plaintiffs suffered serious injury as the proximate result of the negligence committed by the Defendant mortgage lenders.

<u>COUNT TWENTY NINE</u>
**(Negligent Infliction of Emotional Distress)**

397.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

398.     There exists a fiduciary relationship between Defendants and Plaintiffs. Therefore, Defendants had a duty to disclose all material terms to Plaintiffs regarding the mortgage loans and associated documents. The parties' relationship is a relationship of trust and confidence between Plaintiffs and Defendants. Defendants had a fiduciary duty to Plaintiffs as the contracts and transactions Defendants and Plaintiffs were involved in call for full disclosure and perfect good faith between the parties. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997).

399.     Emotional distress occurs when (1) a person, by negligence, proximately causes fright in another; (2) in special circumstances that guarantee a likelihood of a genuine and serious claim for emotional distress. Such person is liable to the injured party in damages for

emotional distress. *Falzone v. Busch*, 45 N.J. 559, 564, 569, 214 A.2d 12, 14, 17 (1965); *Strachan v. John F. Kennedy Memorial Hosp.*, 109 N.J. 523, 537, 538 A.2d 346, 353 (1988); *Devlin v. Johns-Manville Corp.*, 202 N.J. Super. 556, 563, 495 A.2d 495, 499 (Law Div. 1985).

400.   Defendants' failure to act with reasonable care caused Plaintiffs and their family to fear the loss of their homes to foreclosure. During the course of Defendants' collective and individual dealings with Plaintiffs, Defendants, individually and collectively, negligently and/or intentionally, by its acts and/or omissions, made material misrepresentations of fact, and were negligent in a number of instances, including but not limited to, stating that Plaintiffs were obligated to pay amounts that were improperly or illegally accessed.

401.   Special circumstances exist in this case which guarantee a likelihood of a genuine and serious claim for emotional distress. Plaintiffs' fear of losing their homes to foreclosure was genuine. Furthermore, the loss of a home is a serious, stressful, and traumatic experience that rises to the level of loss of livelihood and security.

402.   Plaintiffs' fear of losing their homes to foreclosure was felt not only by Plaintiffs, but Plaintiffs' spouses, children, and elderly.

403.   Defendants' failure to act with reasonable care with regards to obtaining Plaintiffs certain mortgage loans was the proximate cause of Plaintiffs' and their family members' emotional distress.

404.   As a result of Defendants' unlawful conduct, Plaintiffs have suffered damages.

**WHEREFORE** Plaintiffs demand Judgment in his favor and against Defendants, for the following:

      a.   Compensatory damages;

    b.  Actual and statutory damages;

    c.  General damages;

    d.  Punitive and exemplary damages;

    e.  Costs and reasonable attorney's fees;

    f.  Legal costs and cost of suit;

    g.  Such other relief as the court deems just and equitable.

## COUNT THIRTY
### (Recission)

405.　Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

406.　The above-described mortgage contracts are invalid, and otherwise voidable.

407.　The Mortgage contracts and Notes entered into between Plaintiffs and Defendants, their successors and/or assignees are invalid.

408.　Defendants, their successors and/or assignors failed to obtain the legitimate, meaningful consent of Plaintiffs to enter into such a contract.

409.　Alternatively or in addition, the terms of the contracts do not reflect a bargained-for exchange.

410.　As a result of Defendants' unlawful conduct, Plaintiffs have suffered damage.

## COUNT THIRTY ONE
### (Reformation)

411.　Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

412.　Defendants committed fraud against Plaintiffs.

413.    Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants intentionally misrepresented to Plaintiffs that and Defendants would only make a loan that Plaintiffs could afford to pay. Defendants failed to disclose the terms and conditions for repayment, interest, and annual percentage rate prior to obtaining Plaintiffs' signatures upon the deeds of trust. Plaintiffs was not informed at any time what the terms and conditions were contained in the loan produced by Defendants.

414.    The loan documents executed by Defendants did not truly express the intention of Plaintiffs because it lacked repayment schedules Plaintiffs could afford.

415.    Utilization of any reasonable underwriting guidelines would have revealed that Plaintiffs were incapable of repaying the loans in as much as the initial payments. Whereas at the time Plaintiffs acquired the loan, Plaintiffs' liabilities exceeded their assets, making them unable to meet the terms of the loan agreement.

416.    Payments on the loans exceeded Plaintiffs' available income. Defendants did not take into account Plaintiffs' other already existing liabilities. Plaintiffs' already existing liabilities included other properties and mortgage payments that altered Plaintiffs' available income to below that of the loan payments. Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants did not disclose to Plaintiffs the terms and conditions of the repayment and executed documents without any explanation whatsoever.

417.    Defendants were aware of Plaintiffs' financial situation and inability to pay.

418.    Defendants had a superior bargaining power or position over Plaintiffs and Plaintiffs were relegated only the opportunity to adhere to the contract or reject it. Defendants drafted

all the documents related to the loans, no negotiations were possible between Plaintiffs and Defendants, and the contracts were contracts of adhesion.

419.    The loans were unconscionable in that the repayment terms were unfair and unduly oppressive because the payments did not take into account Plaintiffs' liabilities. Thus, Defendants cannot enforce the terms and conditions of the loan against Plaintiffs and any non-judicial foreclosure or attempts at such are void.

420.    Upon information and belief, Defendants entered into a fraudulent scheme, the purpose of which was to make loans to Plaintiffs, which Defendants were keenly aware that Plaintiffs could not afford for the cost was far above the then prevailing market rate, such a scheme was devised to extract illegal and undisclosed compensation from Plaintiffs by virtue of an undisclosed yield spread premium.

421.    As a result of Defendants' unlawful conduct, Plaintiffs have suffered damage.

## COUNT THIRTY TWO
### (Equitable Estoppel)

422.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

423.    Defendants made misrepresentations about the true interest rates and terms of these loans.

424.    Defendants concealed material facts to Plaintiffs about the terms of these loans.

425.    Said acts or omissions by Defendants were done with the intention or expectation that Plaintiffs would act or rely upon the same.

426.    Plaintiffs reasonably and justifiably relied upon the misrepresentation(s) or concealment(s) to their detriment.

**WHEREFORE** Plaintiff demands that equitable relief is necessary to enjoin Defendants from proceeding with any foreclosures, changes in title, and sale of title and/or property upon

Plaintiffs' residences since they lack standing and any enforceable rights under the promissory note.

## COUNT THIRTY THREE
### (Quiet Title)

427.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

428.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants made false representations to Plaintiffs in order to fund loans, in which Plaintiffs' personal residences were to be security therefore.

429.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants made certain representations regarding their honesty, that they were experts in obtaining loans which borrowers could afford and that they would only offer Plaintiffs loans which were in their best interest given their credit history and financial needs and limitations.

430.   Further, Plaintiffs were reassured that they could trust the representations of Defendants. Based on the representations made by Defendants, Plaintiffs reasonably reposed their trust in Defendants' representations and disclosed their private financial information to Defendants in order that Defendants could find loans which were in the best interest of Plaintiffs.

431.   More particularly, Defendants represented that they would not make loans to Plaintiffs unless they could afford the loans and that they would not make the loans unless and until Plaintiffs passed the underwriting guidelines of the lender, which further assured that the loans were being offered to Plaintiffs in their best interest and within their financial needs and limitations.

432.    Defendants allowed Plaintiffs to obtain 100% financing on their homes and also financed Plaintiffs' closing costs; Defendants failed to utilize adequate due diligence regarding Plaintiffs' ability to repay the loan; Defendants, as part of their continuing scheme, intentionally placed Plaintiffs in sub-prime loans to the benefit of Defendants with excessively high interest rates; Defendants failed to provide Plaintiffs mandated disclosures and Defendants repeatedly employed coercive tactics in order to force Plaintiffs to sign the loan documents.

433.    Due to the fraud of Defendants the titles to the subject properties have been rendered unmarketable in that Defendants have caused to be recorded as against subject property documents which have clouded Plaintiffs' titles thereto.

**WHEREFORE** Plaintiffs seek an order of the court quieting title to the subject property.

### COUNT THIRTY FOUR
**(Unjust Enrichment)**

434.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

435.    Defendants have conducted their business in a manner that is unconscionable and their misrepresentations of material facts concerning the terms and conditions of the subject loans, property, and submissions of fraudulent facts concerning the loans have resulted in unjust enrichment to the Defendants.

436.    At all relevant times, Defendants also utilized amounts known to them to be inaccurate to determine the loan amounts allegedly due and owning for the purposes of foreclosure.

437.    Defendants cannot retain the benefit from their actions in violation of the foregoing statutes and the resultant damage caused to the Plaintiffs.

438.     Defendants shall be unjustly enriched at Plaintiffs' expense if the Court does not intervene to prevent the foreclosure action(s) currently contemplated by the Defendants.

439.     Defendants have been furthermore enriched through the receipt of payment from Plaintiffs for services improperly and illegally rendered.

**WHEREFORE** Plaintiffs demand restitution from Defendants in the form of actual damages, exemplary damages, attorney fees, costs, and other such damages as determined by the Court in order to compensate Plaintiffs for the unjust enrichment that Defendants have enjoyed.

### COUNT THIRTY FIVE
**(Civil Conspiracy)**

440.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

441.     There exists a fiduciary relationship between Defendants and Plaintiffs. Therefore, Defendants had a duty to disclose all material terms to Plaintiffs regarding the mortgage loans and associated documents. The parties' relationship is a relationship of trust and confidence between Plaintiffs and Defendants. Defendants had a fiduciary duty to Plaintiffs as the contracts and transactions Defendants and Plaintiffs were involved in call for full disclosure and perfect good faith between the parties. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997).

442.     In connection with the applications for, and consummation of, and the collection and servicing of the respective mortgages and loans made with Plaintiffs, Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants, acted with malice, ill will and reckless indifference toward Plaintiffs in concert with each other via a joint venture or conspiracy for the common purpose of accruing economic gains for themselves at the expense and detriment of Plaintiffs.

443.   Plaintiffs were in fact injured as a direct and proximate result of this malicious combination, which, inter alia, committed acts of fraud and breach of fiduciary obligation. As a result, Plaintiffs are entitled to an award of actual, compensatory, and punitive damages in an amount to be proven at trial against Defendants, individually and collectively.

## COUNT THIRTY SIX
### (Injunctive and Declaratory and Specific Performances)

444.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

445.   Plaintiffs are entitled to injunctive relief due at a minimum to the reasons listed below:

a.   Defendants failed to provide evidence to Plaintiffs that they are the holders of the original note and mortgage;

b.   Defendants committed actual fraud against Plaintiffs and thereafter wrongfully foreclosed on Plaintiffs property;

c.   Defendants violated the Truth in Lending Act;

d.   Defendants violated the Real State Settlement and Procedures Act;

e.   Defendants do not and did not have standing or enforceable rights to enforce the note nor any incidental right to collateral as to foreclose on Plaintiffs' residences, including without limitation, conducting a trustee's sale relative to those properties.

f.   Defendants have foreclosed upon Plaintiff's residences conducting a trustee's sale or causing a trustee's sale to be conducted otherwise;

g.   Such actions have resulted and has caused pecuniary compensation which will not afford adequate relief because Plaintiffs' residences are unique;

446.   Injunctive relief is necessary to enjoin Defendants from proceeding with any foreclosures, changes in title, and sale of title and/or property upon Plaintiffs' residences since they lack standing and any enforceable rights under the promissory note.

**WHEREFORE** Plaintiffs pray for judgment against Defendants as follows:

a.   Compensatory damages;

b.   Actual and statutory damages;

c.   General damages;

d.   Treble damages;

e.   Punitive and exemplary damages;

f.   Reasonable attorney's fees;

g.   Legal costs and cost of suit;

h.   An Order voiding or rescinding the entire mortgage loan transactions and granting Plaintiffs' claim of recoupment and/or setoff, including equitable relief seeking the satisfaction, or reformation of the mortgage transaction as appropriate;

i.   An Order terminating or rescinding the mortgage and security interest in the Property;

j.   An Order returning any and all money paid by Plaintiffs to Defendants and/or Defendants agents;

k.   An order to cease and desist any foreclosure action against the defendants;

l.   Declaration that the mortgage is void and unenforceable;

m.   Declaration that the security interest in Plaintiff's property is void;

n.   Payment of Plaintiffs' actual damages; and

o.   Special damages;

p.   Lawful Interest.

q.  Return of all sums paid to Defendants in connection with the transactions to be returned;

r.  Award of restitution of the value conferred upon Defendants;

s.  Such other relief as the court deems just and equitable.


                                    **THE LAW OFFICE OF FENG LI, ESQ.**


Dated: September 2, 2011            ____/s/ *FENG LI*_____
                                    Feng Li, Esq.
                                    Attorney for Plaintiffs


                        **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a trial by jury to all issues.

                                    **THE LAW OFFICE OF FENG LI, ESQ.**


Dated: September 2, 2011            ____/s/ *FENG LI*_____
                                    Feng Li, Esq.
                                    Attorney for Plaintiffs