**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA and ROLANDO GUTIERREZ, et al., on behalf of themselves and all others similarly situated, <br><br>                 Plaintiffs, <br><br> v. <br><br> TD BANK, et al., <br><br>                 Defendants. | Civil Action No.: 11-5533 (JLL) <br><br><br> **OPINION** |

      This matter is a putative class action arising out of Defendant TD Bank ("Defendant" or "TD Bank")'s alleged predatory lending tactics in relation to mortgage loans issued to Plaintiffs Maria and Rolando Gutierrez ("Plaintiffs") on March 5, 2007 and October 12, 2007. (Compl., ¶¶ 74, 76). Defendant TD Bank has filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. [Docket Entry Nos. 4, 6]. The Court has considered the submissions of the Parties in support of and in opposition to the instant motion, and decides the motion on the papers pursuant to Fed. R. Civ. P. 78. For the reasons stated herein, Defendant's Motion is granted in part and denied in part. Plaintiffs are granted leave to file an Amended Complaint, within sixty (60) days, which cures the pleading deficiencies discussed in this Opinion.

## I. BACKGROUND

      On March 5, 2007, borrower Plaintiffs Maria and Rolando Gutierrez secured their first

mortgage on their subject property from TD Bank and PHH Mortgage. (Compl., ¶ 74). The amount of that first mortgage loan was $372,000, and it was a fixed-rate 30-year loan that bore an initial interest rate of 6.440% per year. (Id., ¶¶ 74-75). That loan was considered a "sub-prime," high-risk loan, and regressed into default. (Id.). On October 12, 2007, Plaintiffs secured a second mortgage from TD Bank in the amount of $45,060, and that mortgage was a fixed-rate 20-year loan that bore an interest rate of 7.790%. (Id., ¶ 76). Thus, the aggregate amount Plaintiffs were loaned was $417, 060, but the appraised value of the property as given from the taxing district of Summit for the duration of Plaintiffs' mortgage transactions was $370,000. (Id., ¶¶ 76-77). Plaintiffs claim that they signed onto the loans without the proper provision of the following forms and disclosures: (1) a completed and/or signed FNMAE Form 1003 Mortgage Application; (2) amortization schedules; (3) verification statements for employment; (4) pro forma or financial statement; (5) a federal disclosure statement; (6) source of the original mortgage solicitation; and (7) signed documentation including Truth in Lending ("TIL") statement, annual percentage rates, finance charges, amount financed and total of payments. (Compl., ¶¶ 77-82).

On March 14, 2010, Plaintiffs, along with 231 different borrower plaintiffs, filed an 81-page complaint against 130 distinct defendant lenders alleging predatory lending practices in defendants' mortgage transactions with plaintiffs. See, generally Almazan, et al. v. 1st 2nd Mortgage Co. of NJ, Inc., et al., Civ. Action No. 10-1336 (DMC). Plaintiffs' filed a 128-page Amended Complaint in Almazan on September 3, 2011, and defendants responded by filing a series of motions to dismiss between September and October 2010. On June 30, 2011, Judge Cavanaugh adopted the Report and Recommendations of Magistrate Judge Dickson, which

recommended the granting of defendants' motions to dismiss Plaintiffs' Amended Complaint for, inter alia, failing to sufficiently plead factual allegations which state a claim upon which relief could be granted. Plaintiffs' Counsel, Feng Li, subsequently filed 25 complaints in new actions before the District Court of New Jersey between September 22 and 23, 2011.[1] The complaints filed siphoned off the individual lender defendants named in the Original and Amended Complaints into separate actions, and each essentially constituted re-filings of the original complaint slightly modified and tailored to each individual lender with a short section of around ten numbered paragraphs detailing the facts of the specific named plaintiffs with whom each defendant had made mortgage loans. The instant action was filed on September 22, 2011 by two of the named plaintiffs in the original complaint as a putative Class Action, isolating TD Bank and John Doe individual Defendants who "collectively established policies for retail and wholesale access to their loan products." [Docket Entry No. 1; Compl., ¶ 7]. The Complaint alleges predatory lending practices in connection with various mortgage transactions entered into by Plaintiffs on their subject properties in violation of Federal and state law. (Compl., ¶ 2). Specifically, the Complaint brings 36 causes of action under the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act

---

[1]Those actions include: Abanto v. Bank of America, N.A. (11-5519 (ES)); Abucay v. Homeeq Servicing (11-5539 (CCC)); Flores v. Wells Fargo (11-5535 (ES)); Coolack v. Select Portfolio Servicing, Inc. (11-5531 (SRC)); Aquino v. Mortgage Lenders Network USA, Inc. (11-5527 (WJM)); Flores v. HSBC (11-5525 (WJM)); Carollo v. Columbia Bank (11-5521 (SDW)); Abucay v. GMAC Mortgage Corp. (11-5523 (CCC)); Lelina v. 1st 2nd Mortgage Co. of NJ, Inc. (11-5517 (DMC)); Dungao v. First Nat'l Lending Servs. (11-5537 (KSH)); Aquino v. Aurora Loan Servs., LLC (11-5518 (KSH)); Almazan v. Cit Group (11-5520 (WJM)); ISIP v. Nationstar Mortgage, LLC (11-5529 (WJM)); Estacio v. Deutsche Bank Nat'l Trust Co. (11-5522 (SDW)); Ryan v. Greenpoint Mortgage Funding, Inc. (11-5524 (WHW)); Salazar v. Nat'l City Bank (11-5528 (SDW)); Smith v. Option One Mortgage Corp. (11-5530 (JLL)); Sanchez v. Suntrust Mortgage, Inc. (11-5532 (FSH)); Magat v. US Bank Nat'l Assoc. (11-5534 (SDW); Cerciello v. Girst Franklin Loan Servs. (11-5536 (CCC)); Auletta-Segura v. Green Tree Servicing, LLC (11-5538 (DMC)); Cortez v. JP Morgan Chase (11-5526 (FSH)); and Keane v. IndyMac Mortgage Servs. (11-5540 (FSH)).

("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Home Ownership Equity Protection Act ("HOEPA"), Racketeer Influenced and Corrupt Organizations Act ("RICO"), and various New Jersey statutes and common law.   Defendant TD Bank filed the instant motion to dismiss Plaintiffs' Complaint on November 18, 2011. [Docket Entry No. 6].

## II.  LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949  (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard is not akin to a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"; mere consistency with liability is insufficient. Id.  In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949.  The burden of proof for showing that no claim has been stated is on the moving party. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)(citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).  During a Court's threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002).  In accordance with the

4

adoption of the new Iqbal standard by the Supreme Court, the Third Circuit held that the "no set

of facts" standard set forth in Conley v. Gibson, 33 U.S. 41, 45-46 (1957) no longer applied to

federal complaints.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  District

courts now reviewing complaints for failure to state a claim must engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated. . . . Second, a District
> Court must then determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible claim for relief."

Id. (citations omitted).

Fraud claims must meet a heightened pleading standard under Fed. R. Civ. P. 9(b), which

requires that "in all averments of fraud or mistake, the circumstances constituting fraud or

mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  "To satisfy this heightened

standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or

otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico

v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007)(citing Lum v. Bank of Am., 361 F.3d 217, 224

(3d Cir. 2004)).  The plaintiff must also allege "who made the purported misrepresentations and

what specific misrepresentations and what specific misrepresentations were made." Id.  With

this framework in mind, the Court turns now to Defendant's motion.


### III.  DISCUSSION

#### A.  Non-Fraud-Based Claims (Counts 4, 8-9, 19-22, 29-30, 34)

While the majority of Plaintiffs' claims are fraud-based claims, requiring a heightened

pleading standard under Rule 9 of the Federal Rules of Civil Procedure, seven of Plaintiffs'

claims are not fraud-based and are appropriately reviewed under the Rule 8(a) standard as

5

interpreted under <u>Twombly</u> and <u>Iqbal</u>. These claims are the following: (1) FCRA claims (Counts 8 and 30); (3) an FDCPA claim (Counts 4);(3) a New Jersey's Truth in Consumer Contract, Warrant and Notice Act claim (Count 9); (4) a breach of fiduciary duty claim (Count 19); (5) breach of contract and unconscionability claims (Counts 20 and 22); (6) a breach of the covenant of good faith and fair dealing claim (Count 21); (7) a negligent infliction of emotional distress claim (Count 29); and (8) an unjust enrichment claim (Count 34).

Defendant moves to dismiss these claims for failure to state claims upon which relief may be granted in part on the basis that the facts alleged in the instant Complaint are identical to those in the complaint dismissed in <u>Almazan</u>: "Plaintiffs' counsel . . . recycle[d] the <u>Almazan</u> complaint by adding a few sparse and mostly conclusory allegations, and filed it in this action with the hope he would have better luck before a different Judge. The minor adjustments to the <u>Almazan</u> complaint are woefully insufficient to satisfy Rule 8 and the entire Complaint should be dismissed on this ground alone." (Def. Br., at 1-2). For example, Defendant argues,

> [t]here are no facts alleged . . . that demonstrate what disclosures, if any, TD Bank failed to provide. . . . Count Four . . . fails to allege facts to support any conclusion that TD Bank is either a debt collector (a party collecting its own debt cannot be a debt collector as a matter of law) or even that it engaged in debt collection activities. Likewise, Plaintiffs assert a claim for breach of contract (Count 20) but fail to attach any contract (or any other documents0 and do not identify any applicable contract language that they believe was breached.

(<u>Id.</u>, at 2).

In their Opposition, Plaintiffs argue that they have satisfied the liberal pleading requirements required by Rule 8(a). Plaintiffs summarily state that they "have provided general allegations within their class action pleading as to provide fair notice to the Defendants as to Plaintiffs['] claims of which relief is sought. Plaintiffs purchased residential properties by

6

obtaining mortgage lending from the Defendants." (Pls. Opp'n Br., at 12). Plaintiffs continue by

making legally conclusory statements regarding Defendant's culpability: "Defendants made

numerous representations to borrowers as to entice the borrower into a lending agreement with

Defendant. The Defendant misrepresented to the Plaintiffs that the mortgage loans were

affordable, the Plaintiffs could afford their mortgage loans, and that the mortgage loans were in

Plaintiffs' best interests even though[] the Defendants failed to verify and review Plaintiffs

history as to income and assets that would be necessary to conclude that these loan[s] were

affordable to the Plaintiffs." (Id., at 12-13).

Upon review of Plaintiffs' Complaint, the Court agrees with Defendant that the

Complaint, consisting in 446 paragraphs, fails to satisfy the Rule 8(a) pleading requirements as

set forth in Twombly and Iqbal. Most significantly, as a general matter, the paragraphs in the

complaint do not adequately put Defendant TD Bank on notice of any specific claims linked to

specific acts that it or the John Doe Defendants committed during the course of its mortgage

transactions with the Plaintiffs. The following is a typical sequence of paragraphs purportedly

stating facts to support Plaintiffs claims:

> 20. Defendants enrolled Plaintiffs into a[n] 80-20 Program whereby Defendants allowed
> Plaintiffs to obtain 100% financing on their properties without requesting any down
> payment by Plaintiffs.
>
> 21. Defendants enrolled Plaintiffs into a[n] 80-10 Program whereby Defendants allowed
> Plaintiffs to obtain 90% financing on their properties and requesting little or no down
> payment by Plaintiffs.
>
> 22. Defendants gave Plaintiffs an adjustable rate mortgage whereby payment for the first
> two years was fixed and increased exponentially thereafter.
>
> 23. Defendants allowed Plaintiffs to obtain lending even though a review of Plaintiffs'
> history would show that Plaintiffs were high-risk borrowers.

7

24. Defendants allowed Plaintiffs to obtain lending even though a review of Plaintiffs' history would show that Plaintiffs had neither income nor assets ("No-Income No-Asset Program").

. . .

31. Defendants enrolled Plaintiffs into an 80-15-5 Program whereby Defendants allowed Plaintiffs to obtain 100% financing on their properties without requesting any down payment by Plaintiffs.

32. Defendants allowed Plaintiffs to obtain 90% financing on their properties by enrolling Plaintiffs into a 70-20 Program.

(Compl., ¶¶ 20-24, 31-32). The portion of the Complaint dealing specifically and exclusively

with facts relating to Plaintiffs' transactions with Defendant, Paragraphs 74 to 86, mimic the

generality and legally conclusory statements made in the rest of Plaintiffs' Complaint:

74. Borrowers secured a 1st Mortgage from TD Bank March 5, 2007 in the amount of $372,000. The loan bore an initial rate of 6.440% per year. PHH Mortgage was also a Lender as were their successors & assigns. The loan regressed into default.

75. First Mortgage: The loan was written as a fixed rate 30 year loan with an interest rate of 6.440%. The loan was considered a "sub-prime" loan which required, by the Lenders, a higher than "par" interest rate. It was also categorized as "high risk."

76. A 2nd mortgage was noted dated 10/12/2007 to TD Bank in the amount of $45,060 at an apr of 7.790%. It is a 20 year fixed interest loan. Aggregate loan amount was then $417,060.

77. The completed HUD-1 closing statement was provided as signed. The Client was not provided completed and/or signed FNMAE form 1003 Mortgage Applications; no Amortization schedules, or Verification Statements for Employment and either a pro forma or a Financial Statement were provided to the client. The *Federal Disclosure Statement was not provided. Relevant & vital documents were unsigned. The Mortgage application (unsigned) stated that the Borrowers had $5,000 in liquid assets*.

. . .

84. The Lender's [*sic*] should have been more aware of the shifting economic winds and have insisted on greater applicant equity and subsequently followed a more conservative lending policy to offset that pending value decline.

85.  The loan amount was excessive and fraught with potential abuse.  Defendants made numerous material representations to Borrowers including loan affordability and the deleterious effects of variable rate interest calculation.

86.  **Predatory Lending: The pattern of irregularities, unrealistic asset-based reliance, flagrant lack of disclosures, and under-emphasis on liquidity contributed to *predatory lending*.  These deceptive practices, fraudulent acts and omissions seemed poised to disregard and misrepresent the best interests of the Borrowers.  High LTV loans set a stage for unrealistic expectations of payment in the future.  Predatory patterns were replete in this high-risk transaction.**

(Compl., ¶¶ 74-77, 84-86)(emphasis in original).

Plaintiffs are mistaken when they generally characterize the pleading standard under Rule 8(a) as interpreted under Twombly and Iqbal as being a "simplified pleading standard" requiring "a short and plain statement of the claim" where "[s]pecific facts in the pleadings are not necessary."  (Pls. Opp'n Br., at 12-13).  While Plaintiffs are correct in pointing to the "short and plain statement" language of Rule 8(a), it is not the case that, after Twombly and Iqbal, specific facts are never necessary to survive a Rule 12(b)(6) motion to dismiss.  See, e.g., Fowler, 578 F.3d at 210 (finding that the "no set of facts" standard established in Conley v. Gibson was rejected as the appropriate test in Twombly and, definitively, in Iqbal).  The standard as established through recent Supreme Court precedent does not draw lines based on specificity, but rather based on plausibility.  Without clearly defining a threshold for what constitutes "plausible" claims, the Supreme Court distinctly pointed to a mechanism by which to distinguish those which are plausible from those which are not by distinguishing between, on the one hand, statements alleging in a conclusory manner a defendant's conformity to legally proscribed activity with accompanying threadbare facts, and on the other, statements containing factual allegations that, separated from mere restatements of legal elements of a claim, assert plausible grounds for relief.  See, e.g., Guirguis v. Movers Specialty Servs., 346 Fed. Appx. 774, 777 (3d

9

Cir. 2009)("Although a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently 'permit the court to infer more than the mere possibility of misconduct.'")(citations omitted).

While there are some facts alleged in the above-cited paragraphs and in paragraphs almost identical to them repeated throughout Plaintiffs' Complaint, there are three fundamental deficiencies in Plaintiffs' allegations as stated.  First, it appears that Plaintiffs have reused the original complaint filed in <u>Almazan</u> without properly editing out facts not relevant for this action. Specifically, it is unclear if Plaintiffs were signed onto loans through the 80-20, 80-10, 80-15-5, 70-20, or any other Program by Defendants, but it is unlikely that, given Plaintiffs have only alleged to having signed two loan agreements, they likely did not sign onto all of the programs respectively listed.  Second, given the overinclusive nature of the Complaint as filed with respect to plaintiffs not named in the instant action, Defendant cannot be placed on notice with regard to what claims Plaintiffs specifically intend to allege, on behalf of themselves and similarly situated borrowers, to which Defendant must respond.  Third, the specific facts regarding the mortgage transactions which occurred between Defendant and Plaintiffs are scarce, while the Complaint extensively states and restates legally conclusory statements regarding Defendant's wrongful conduct as defined exclusively within the terms of the relevant statutes or case law authority. Regarding the limited facts given, Plaintiffs do not indicate, for example: which exact disclosures required by law were not provided; the nature and extent of any credit reporting which occurred by Defendants in violation of federal law; what, if anything, was inaccurate about such reporting; the substance of any written notices to Plaintiffs which violated their rights under state law; which terms of any contract were breached by Defendants; the nature of the emotional distress

10

allegedly suffered by Plaintiffs; what, if any, benefit Defendants may have obtained due to alleged inaccuracies represented to Plaintiffs as amounts owed for any loans; what representations, if any, Plaintiffs made to Defendants regarding their financial circumstances and their "ability to repay" justifying their allegations regarding Defendants predation, and so on. Plaintiffs need not assert all of these facts to survive a motion to dismiss, but they must assert sufficient facts to make their claims plausible. Aside from the limited facts given–the amount of Plaintiffs' mortgage loans, the dates on which mortgage agreements were signed and the interest rates on those loans–the Complaint utilizes general and conclusory statements regarding Defendants' alleged conduct, such as "Defendants were well aware of the lending flaw which predisposed the Class Mortgages to fail and its related ensuing problems from many sources, including, but not limited to its representatives, dealers, and consumers" (Compl., ¶ 63) and "The costs and fees of Defendants at the closing exceeded those listed on the good faith estimates" (Id., ¶ 116), which neither allow this Court nor the Defendant to plausibly determine how their specific actions implicate their liability to Plaintiffs. Additionally, Plaintiffs' Opposition fails to cite to any paragraphs in the Complaint wherein facts relevant to their alleged claims are discernable. Therefore, the Court finds that Plaintiffs' non-fraud-based claims fail to sufficiently allege plausible claims upon which relief may be granted, and those claims are dismissed without prejudice. Plaintiffs are directed to amend these claims in such manner that will provide Defendants with notice as to the specific facts upon which these claims are based.

### B. Fraud-Based Claims (Counts 13, 17-18, 23-27, and 35)

Plaintiffs' fraud-based claims must meet a heightened pleading standard under Rule 9 of the Federal Rules of Civil Procedure. These claims are the following: (1) a fraud-based federal

RICO claim (Count 17); (3) a New Jersey fraud-based RICO claim (Count 18); (3) a fraud-based

civil conspiracy claim (Count 35); (4) a New Jersey common law fraud claim (Count 23); (5) a

New Jersey equitable fraud claim (Count 24); (6) claims for negligent and intentional

misrepresentation under New Jersey law (Count 25); (7) fraudulent misrepresentation and

concealment claims (Count 26); (8) a negligent mispresentation or concealment claim (Count

27); and (9) a New Jersey Consumer Fraud Act claim(Count 13).

Defendant argues that these claims should be dismissed because Plaintiffs' Complaint has

"not provided the 'who, what, when, where and how' of any supposed fraud." (Def. Br., at 15).

Specifically, Defendant claims that Plaintiffs do not provide any specific facts regarding when

and where any alleged fraud occurred, nor do they inject precision or other measure of

substantiation into their fraud allegations. (Id., at 13).

Plaintiffs respond that their Complaint has satisfied the pleading requirements required by

Rule 9, and when they do not, it is only because "Defendants have knowledge and control over

associated documents and information" inaccessible to Plaintiffs, including:

> 7. Details about the likely consequences Plaintiffs would be subjected to with respect to their particular loans;
>
> 8. Details about the difference between loans Defendants promised to Plaintiffs and loans Plaintiffs actually received;
>
> 9. Details about Defendants' review of Plaintiffs' financial background, income and assets;
>
> 10. Details about the programs into which Defendants induced Plaintiff [*sic*] to enroll;
>
> 11. Defendants' true intentions in inducing Plaintiffs to obtain certain loans;
>
> 12. Extent of Defendants' knowledge that Plaintiffs would be unable to afford their loans;

13. Extent of Defendants' actual and constructive notice that Plaintiffs would be unable to afford their loans;

14. Each and every unlawful tactic Defendants employed to induce Plaintiffs to obtain certain mortgage loans;

15. Each and every predatory lending tactic Defendants employed to induce Plaintiffs to obtain certain mortgage loans[;]

16. Each and every instance of mortgage flipping Defendants employed to induce Plaintiffs to obtain certain mortgage loans;

17. Each and every false statement and misrepresentation Defendants made to Plaintiffs;

18. Each and every disclosure Defendants failed to make to Plaintiffs[;]

19. Each and ever inaccurate statement Defendants provided to Plaintiffs[;]

20. Each and every piece of information Defendants failed to provide to Plaintiffs[;]

21. Each and every essential term lacking in the contract Defendants made with Plaintiffs.

(Pls. Opp'n Br., at 19-20).

Upon review of Plaintiffs' Complaint, the Court agrees with Defendant that Plaintiff has failed to meet the heightened pleading standard required for fraud-based claims in their Complaint as filed. First, the Court finds it critical to note the confusion in Plaintiffs' Opposition Brief regarding the appropriate standard fraud claims must meet in order to be sufficiently pled. Plaintiffs are mistaken in stating that, "While Fed. R. Civ. P. 9(b) requires Plaintiffs to plead fraud allegations with particularity, Rule 9 must be applied with the principles of Fed. R. Civ. P. 8 in mind. Rule 8 requires only a short and concise statement of the claim." (Pls. Opp'n Br., at 16). Interpreting Rule 9(b) in conformity with Rule 8 in this way would defeat the explicit language in Rule 9(b) requiring that "a party must state with particularity the circumstances constituting fraud or mistake" in alleging fraud or mistake. Fed. R. Civ. P. 9(b). It is clear under

13

Third Circuit Law that plaintiff must plead or allege the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation," and "who made the purported misrepresentations and what specific misrepresentations and what specific misrepresentations were made." Frederico, 507 F.3d at 200; see also GSC Partners CDO Fund v. Washington, 368 F.3d 228, 239 (3d Cir. 2004)(stating that Rule 9(b) requires "the first paragraph of any newspaper story – that is, the who, what, when, where and how of the events at issue.").

Second, Plaintiffs' fraud-based claims as alleged in their Complaint fail to state any facts with particularity regarding the alleged fraudulent statements or misrepresentations on the part of Defendants. Plaintiffs' own citation of "specific" facts in its Opposition Brief are illustrative of the generality with which Plaintiffs' fraud-based claims are alleged:

Specifically, Plaintiffs state, Defendants:

1. Falsely represented to Plaintiffs that Plaintiffs could afford their loans;

2. Falsely represented to Plaintiffs that Plaintiffs' loans would provide them with economic benefit;

3. Falsely represented to Plaintiffs that Plaintiffs obtained loans that matched their respective earning and income capacity;

4. Falsely represented to Plaintiffs that Plaintiffs obtained loans that were in their best interests;

5. Failed to provide Plaintiffs financial statements and disclosures mandated by law;

6. Failed to provide Plaintiffs good faith estimates of Plaintiffs' monthly statements.

(Pls. Opp'n Br., at 18-19). Plaintiffs' Complaint follows almost identically the language just cited, for example, in Paragraph 37: "Defendants had knowledge of falsity of statements [*sic*]. Defendants knew mortgage loans were not affordable, and specifically that Plaintiffs could not

14

meet the loan obligations. Defendants knew mortgage loans were not in Plaintiffs' best interests." (Compl., ¶ 37). These conclusory statements do not state any date or point in time when alleged misrepresentations occurred, nor do they state: the location of such fraudulent statements; the specific individuals–whether TD Bank employees or otherwise–that made or failed to make statements; the substance of the misrepresentations; any specific facts regarding Defendants' knowledge or belief in the falsity of the facts represented; and any specific facts indicating that Defendants intended that Plaintiffs rely on such facts.

Third, while Plaintiffs argue that the "requirements of Rule 9(b) may be relaxed where factual information is exclusively within the opposing party's knowledge or control," Plaintiffs' list cited infra regarding what those documents and information consist in mistakes the scope of the heightened pleading requirement. Pleading fraud-based claims with particularity does not require that Plaintiffs plead "each and every instance" of a false statement and misrepresentation to Plaintiffs or of mortgage flipping by Defendants. Plaintiffs are most certainly not required to present in their Complaint "each and every unlawful tactic" or "predatory lending tactic Defendants employed to induce Plaintiffs to obtain certain mortgage loans." Further, the Court disagrees that a substantial amount of documents and information listed by Plaintiffs is not in Plaintiffs' possession. Of the documents and information listed in Plaintiff's Opposition Brief, at least the following should be known to Plaintiff and articulable within a Complaint: a general sense of how the promised loans differed from the loans Plaintiffs actually received; a general sense of the nature of the program they enrolled in to receive their loan; the nature of the representations they made to Defendants regarding their financial status and the dates of those representations; any other notice Plaintiffs may have given Defendants regarding their inability to

afford the loans; the specific misrepresentations, false or inaccurate statements made or provided

to Plaintiffs, and most certainly the essential terms of Plaintiffs contract with Defendants and

what they allege was lacking under federal or state law.  Plaintiffs need only state with

particularity the who, what, when and where of the false misrepresentations or omissions made

by Defendants based on their familiarity with said misrepresentations as experienced by them in

the mortgage transactions, and those facts are both within Plaintiffs' control and need not be

enumerated in every detail or with respect to each and every instance to meet the heightened

pleading standard for fraud-based claims.  Since Plaintiffs' fraud-based claims fail to do this,

they are dismissed without prejudice to Plaintiffs' refiling of an amended complaint which cures

the pleading deficiencies stated herein.

### C.  Federal Time-Barred Claims (Counts 1-4, 7, 12, 14, 30)

Defendant argues that eight of Plaintiffs' federal claims are time-barred and may be

dismissed, namely Plaintiffs' TILA, RESPA, FDCPA and HOEPA claims.  (Def. Br., at 16-17).

Those claims include: (1) two TILA claims (Count 1 and 30); (2) three RESPA claims (Counts 2,

3 and 12); (3) two FDCPA claims (Counts 4 and 7); and (4) two HOEPA claims (Count 14 and

30). Claims under the TILA, RESPA, FDCPA and HOEPA must be brought within one to three

years of the alleged violation.  See, e.g., 15 U.S.C. § 1640(e)(TILA claims must be brought

within one year of the date of the occurrence of the violation, and HOEPA claims brought

pursuant to 15 U.S.C. § 1639(a) must be brought within three years after the date on which the

violation occurred); 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(a)(1)-(3)("Regulation Z")(a

claim for rescission under the TILA or HOEPA is barred at the end of the three-year limitations

period);Williams v. Wells Fargo Home Mortg., Inc., 410 Fed. Appx. 495, 498 (3d Cir. 2011);

Kliesh v. Select Portfolio Servicing, Inc., 419 Fed. Appx. 268, 271 (3d Cir. 2011); 12 U.S.C. §

2614 (RESPA claims brought pursuant to 12 U.S.C. § 2605 must be filed within three years of

the violation, and RESPA claims brought pursuant to 12 U.S.C. §§ 2607 or 2608 must be filed

within one year of the violation); 15 U.S.C. 1692k(d) (FDCPA claims must be brought within

one year from the date on which the violation occurs). Defendants assert that, since the two

loans at issue in the Complaint were consummated on March 5, 2007 and October 12, 2007, the

September 22, 2011 filing of this action well exceed either the one- or three-year statute of

limitations under the respective statutes. (Def. Br., at 16). Regarding the three-year statute of

limitations for Plaintiffs' rescission claim brought pursuant to TILA and HOEPA, Defendant

argues that Plaintiffs were required to file their Complaint by either March 5, 2010 as to the

mortgage loan or October 12, 2010 as to the refinancing loan for such claims not to be time-

barred, and Plaintiffs did not so file. (Id., citing Santone-Galayda v. Wachovia Mortg., FSB,

2010 U.S. Dist. LEXIS 135496, at *16 (D.N.J. Dec. 22. 2010)(dismissing TILA, HOEPA and

RESPA claims as barred by the statute of limitations)).

 Plaintiffs do not contest that the above-cited claims are untimely, but argue that the

statute of limitations should be equitably tolled due to "Defendant's knowing and active

concealment, denial and/or misleading actions with respect to the facts alleged herein. The Class

had been kept ignorant by Defendant's [sic] of any and all vital and material information

essential to the terms of the parties['] agreement which lead to the pursuit of these claims alleged

herein." (Pls. Opp'n Br., at 24). Plaintiffs also argue that the statute of limitations should be

tolled under the continuing violations doctrine, because Defendant's transactions with "potential

and current borrowers, constitutes a pattern or a practice that fall[s] under the herein alleged

claim brought by this Class.  The impact of such policies has affected individuals in the past,

present, and will affect individual borrowers in the future. . . . Under the continuing violation

doctrine, a statute of limitations may not bar claims where the Plaintiff challenges not just one

incident but an unlawful practice that continues into the limitations period." (Pls. Br., at 27).

      1.  Equitable Tolling Doctrine for Fraudulent Concealment

      For the equitable tolling doctrine of fraudulent concealment to apply to a case, a plaintiff

must prove that: "(1) the defendant actively misled the plaintiff respecting the plaintiff's claim;

(2) the defendant prevented the plaintiff from recognizing the validity of the claim within the

limitations period; and (3) the plaintiff used reasonable diligence in uncovering the relevant facts

that form the basis of a claim."  Poskin v. TD Banknorth, N.A., 687 F. Supp. 2d 530, 550 (3d

Cir. 2009).  The Third Circuit has been clear that "[t]he fraudulent act that forms the basis of a

claim for damages . . . will not satisfy the factual showing required to invoke the equitable tolling

doctrine of fraudulent concealment."  Id.  Rather, a plaintiff "must show that the lenders 'took

some active steps to mislead the borrowers with the result the borrowers were lulled into sitting

on their right to redress.'  In other words, a plaintiff must point to some additional affirmative

fraudulent act that perpetuates concealment; inaction or silence by the lender is not sufficient to

show fraudulent concealment to toll equitably the limitations period."  Id. (quoting In re Cmty.

Bank of N. Va., 467 F. Supp. 2d 466, 479 (W. D. Pa. 2006)).

      Plaintiffs present no specific facts beyond generalized allegations that TD Bank fulfills

these requirements by having actively misled them respecting their claim, prevented them from

recognizing the validity of their claim within the respective statute of limitations' periods, and

that Plaintiffs used reasonable diligence in uncovering the relevant facts that form the basis of the

claim. First, Plaintiffs allegations regarding Defendant's active concealment limit themselves to the alleged fraudulent mortgage transactions rather than to any additional affirmative fraudulent act that perpetuates concealment. For example, Plaintiffs argue that, "[i]n the instant case, Plaintiffs' federal claims are subject to equitable tolling because of the fraudulent concealment on the part of Defendants. . . . Defendant concealed material facts from Plaintiffs in order to induce Plaintiffs to obtain mortgage loans that Defendants had knowledge Plaintiffs would be unable to afford. Defendant failed to make material disclosures and suppressed numerous facts in connection with inducing Plaintiffs to enter into the loan agreements." (Pls. Br., at 24-25). Beyond these general allegations, Plaintiffs provide no facts regarding Defendant's conduct which misled them from recognizing they had a potential claim arising from their mortgage transactions with Defendant. Second, Plaintiffs cites to no facts indicating the Defendant prevented Plaintiffs from recognizing the validity of their claim within the limitations period, by, for example, failing to respond to Plaintiffs' attempts to gather information regarding their loans within the limitations period, or actively deferring Plaintiffs' requests until the limitations period had expired. Third, Plaintiffs give no indication that they exercised reasonable diligence to uncover facts relevant for their claims concerning their mortgage transactions with TD Bank. For example, the Complaint gives no indication of the dates of Plaintiffs' defaults on their mortgages, or at what point Plaintiffs may have contacted TD Bank to inform them of any problems in payment or to request information regarding an alleged misrepresentation which they discovered had been a false statement regarding their loans.

For these reasons, Plaintiffs fail to establish the elements required to equitably toll the statute of limitations on the grounds that Defendant's fraudulent acts regarding Plaintiffs' claims

19

prevented them from filing a complaint within the requisite statute of limitations period.

### 2.  Continuing Violations Doctrine

Continuing violations doctrine has most commonly been invoked in employment discrimination actions, and, more narrowly in Section 1983 actions claiming violations of constitutional rights.  Plaintiffs cite to no authority where a court has applied the doctrine for claims arising from allegedly fraudulent mortgage transactions.  The continuing violations doctrine "is an equitable exception to a strict application of a statute of limitations where the conduct complaint of consists of a pattern that has only become cognizable as illegal over time." Foster v. Morris, 208 Fed. Appx. 174, 177 (3d Cir. 2006)(citing Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)).  A court applies three factors in its inquiry into the application of the doctrine to a particular case: "(1) subject matter–whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency–whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence–whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.  The consideration of 'degree of permanence' is the most important factor." Id.

The Court finds that the continuing violations doctrine is inapplicable to toll the statute of limitations period for Plaintiffs' above-cited claims at this time.  First, while Plaintiffs' Complaint suggests that they and other similarly situated plaintiffs are "mostly immigrants of Spanish or African descent. . . . [and] are non-English speakers or speak little English and have not obtained high education background," the Complaint itself does not indicate that Plaintiffs

20

were part of a broader set of discriminatory policies constituting the same type of discrimination over time. (Compl., ¶ 18). Further, and more fundamentally, the subject matter of Plaintiffs' claim is that Defendant fraudulently sold them two mortgages that they couldn't afford, discrete and isolated incidents regarding which Plaintiffs provide no evidence beyond the agreements themselves of recurring acts of concealment or misrepresentation. Third, the alleged fraudulent acts had a degree of permanence in that Plaintiffs' contractual obligations under the agreements were created at the time of signing and persisted either through the life of the agreements or until such agreements were breached, and thus Plaintiffs' assumption of said obligations triggered their awareness, even in the absence of Defendant's continuing intent to engage in illegal activity, that any rights granted, denied, or violated by virtue of the agreements and the circumstances surrounding their signing needed to be asserted within the relevant statute of limitations period. Finally, while Plaintiffs allege that Defendant's fraudulent activity is ongoing as to other current or potential plaintiffs, that alleged activity is not relevant for determining whether Plaintiffs themselves suffered a continuing violation, a requirement necessary for finding that the statute of limitations should be equitably tolled with respect to specifically their claim.

Since Plaintiffs do not meet the relevant requirements to establish that their claims should be equitably tolled for the relevant statute of limitations periods, the Court dismisses Counts 1-4, 12, 14 and 30 without prejudice on the basis that they are untimely. To the extent that Plaintiffs can amend their Complaint to cure the deficiencies stated herein, the Court affords them the opportunity to so amend.

### D.  Claims Not Cognizable as a Matter of Law (Counts 5-7, 10, 11, 16, 22, 28, 31-33)

Defendant argues that at least nine of Plaintiffs' 36 claims not already addressed in this

Opinion should be dismissed as not cognizable as a matter of law. Those claims include Plaintiffs': (1) furnishing inaccurate information to credit agencies claim (Count 5); (2) failure to correct inaccurate reporting claim (Count 6); (3) failure to provide required notices and disclaimers (Count 7); (4) predatory and negligent lending claims (Counts 10 and 28); (5) New Jersey Licensed Lenders Act claim (Count 11); and (6) Unfair Business Practices claim (Count 16). The Court will address each of these claims in turn.

### 1.  Furnishing Inaccurate Information to Credit Agencies, Failure to Correct Inaccurate Report, and Failure to Provide Required Notices and Disclaimers Claims (Counts 5-7)

Defendant argues that Counts 5, 6 and 7 of Plaintiffs' Complaint are not cognizable separate and apart from the statutory causes of action which Plaintiffs already allege under the TILA, RESPA, FDCPA, HOEPA and the New Jersey Consumer Fraud Act. (Def. Br., at 17). Plaintiffs respond by stating that they "are not required to prove the merits of the case before the class can be certified." (Pls. Opp'n Br., at 27).

Courts will not dismiss counts of a complaint for failure to state a claim merely because the complaint miscategorizes legal theories or does not point to an appropriate statute or law to raise a claim for relief. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 909 n.10 (1990); Common Cause v. Pennsylvania, 558 F.3d 249 (3d Cir. 2009).  The Court does note, however, that while Count 5 cites to no federal or state law under which Plaintiffs' assert a cause of action, Count 6 cites to the FCRA and Count 7 to the FDCPA. For the purposes of notice to Defendant, and given the large number of Counts included in Plaintiffs' Complaint which may or may not be repetitive or redundant, the Court dismisses Counts 5, 6 and 7 without prejudice. Plaintiffs may amend said counts to further clarify which requirements under the federal and state statutes already cited by Plaintiffs Defendants have violated separate and apart from the counts in which

Plaintiffs have already asserted causes of action against Defendant.

      2. Predatory Lending and Negligent Lending Claims (Counts 10 and 28)

      Defendant argues that, as with Counts 5 through 7, Plaintiffs fail to state claims either for predatory lending in Count 10 or for negligent lending in Count 28 which have not already been incorporated into Plaintiffs' other causes of action. (Def. Br., at 17). Plaintiffs do not address Defendant's arguments to dismiss these claims in their Opposition Brief.

      Plaintiffs' Complaint cites to <u>Associates Home Equity Services, Inc. v. Troup</u> for the definition it provides of "predatory lending," a case in which claims were brought under the New Jersey Consumer Fraud Act, the New Jersey Law Against Discrimination, the Fair Housing Act, the Civil Rights Act, and the TILA. <u>See</u> 343 N.J. Super. 254 (App. Div. 2001); Compl., ¶ 200. The case dealt with Plaintiffs' claims regarding predatory lending under the TILA, and as Plaintiffs have asserted TILA claims in Counts 1 and 30 as well as claims under the New Jersey Consumer Fraud Act (Count 13) of their Complaint, the Court will dismiss this Count without prejudice to Plaintiffs' amending said Count to include any and all claims distinct from those made under Counts 1, 13 and 30.

      Count 28 generally states that, "[t]hrough misrepresentations and omissions of material information, Defendant negligently induced Plaintiffs to enter into these mortgage transactions which have culminated in the present foreclosures." (Compl., ¶ 393). Plaintiffs cite to no law or statute separate from those stated above (e.g., the TILA, RESPA, FDCPA, HOEPA and the New Jersey Consumer Fraud Act) regarding the actionability of such a claim independently of claims already brought under other statutes in Plaintiffs' Complaint. Therefore, the Court also dismisses Count 28 without prejudice, and Plaintiffs may amend said Count to included any and all claims

distinct from those made in other Counts of their Complaint.

### 3.  New Jersey Licensed Lenders Act Claim (Count 11)

Defendant argues that the New Jersey Licensed Lenders Act does not apply to federally chartered banks such as TD Bank, and should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Def. Br., at 18). Plaintiffs do not respond to this argument in their Opposition Brief.

New Jersey's Licensed Lender Act expressly exempts "depository institutions" from its regulation, but subsidiaries and service corporations of these institutions are not exempt. See N.J.S.A. 17:11C-55 (2012). A "depository institution" is defined as "a state or federally chartered bank, savings bank, savings and loan association, building and loan association or credit union, irrespective of whether the entity accepts deposits." N.J.S.A. 17:11C-2 (2012). TD Bank is defined in Plaintiffs' Complaint as "the parent company of its acquired lenders' or subsidiaries' residential mortgage-lending operations." (Compl., ¶ 5). Plaintiffs list separately subsidiaries of TD Bank as unnamed John Does. (Id., ¶ 6). Thus, since TD Bank is a federally chartered bank and its subsidiaries are named as separate defendants, TD Bank is exempt from liability under the New Jersey Licensed Lenders Act. Plaintiffs' Licensed Lenders Act claim against Defendant TD Bank is therefore dismissed with prejudice as to that named Defendant.

### 4.  Unfair Business Practices Claim (Count 16)

Defendant argues that Count 16 of Plaintiffs' Complaint alleging a violation of unfair business practices as not cognizable as a matter of law and should be dismissed as duplicative of other causes of action already contained in Plaintiffs' Complaint. (Def. Br., at 17). Plaintiffs do not address Defendant's argument regarding this claim in their Opposition Brief.

In Count 16, Plaintiffs only cite to N.J.S.A. 56:8-1, a definitional section of New Jersey's

Unfair Trade Practices Act, regarding Defendant's violation of any New Jersey laws. (Compl., ¶

261). However, they cite to <u>United Jersey Bank v. Kensey</u> to support their allegations that a

fiduciary relationship existed between Defendant and Plaintiffs. (Compl,. ¶ 260; <u>see</u> <u>Kensey</u>, 306

N.J. Super. 540, 551 (App. Div. 1997)). To the extent that Plaintiffs' claim against Defendant

regarding any unfair business practices is alleged to be in violation of their fiduciary duties, said

claim is redundant in that Plaintiffs assert a breach of fiduciary duty claim in Count 19 of their

Complaint. Since the Court cannot discern the nature of any additional claims made by Plaintiffs

under Count 16, that Count is dismissed without prejudice to Plaintiffs' amendment of any

claims asserted therein which do not duplicate other claims already stated in Plaintiffs'

Complaint.


On a final note, the Court notes with serious concern Defendant's allegations regarding

Plaintiffs' counsel's recycling of its original complaint and opposition briefs filed in former

actions before the District Court of New Jersey. (Def. Br., at 6; Def. Reply Br., at 2). Plaintiff's

Opposition Brief to the instant motion has a number of sections which in no way respond to

arguments made in Defendant TD Bank's Motion to Dismiss: (1) a "Class Determination made

Independent of the Merits of Case" section defending against an attempt to deny class

certification, an attempt not made by Defendant TD Bank (Pls. Opp'n Br., at 10); (2) a section

defending Plaintiffs' standing to sue pursuant to Fed. R. Civ. P. 12(b)(1) when no such motion

was filed by Defendant nor was standing addressed in Defendant's moving papers (<u>Id.</u>, at 14-15);

and (3) a section entitled, "Plaintiffs are Not Required to Plead Specific Facts Concerning Role

and Participation of Each Individual Defendant,"and legal analysis regarding same recycled from its opposing brief in the <u>Almazan</u> matter as the issue of separately named defendants was never before this Court in the instant action (<u>Id.</u>, at 16, 21-22). The inclusion of these paragraphs is an indication to the Court that Plaintiffs' Counsel is at best not utilizing the forty pages allotted to Plaintiffs for opposing Defendant's motion in a manner germane to the arguments presented by therein, or, at worst, is refiling legal documents for which his clients were already charged. When Magistrate Judge Dickson submitted his recommendation to grant defendants' motions to dismiss the <u>Almazan</u> matter to Judge Cavanaugh, he admonished Plaintiffs' counsel for potential violations of Loc. Civ. R. 11.2, stating: "Redundant, blunderbuss-like filings of duplicative actions is not appropriate. In that regard, the Defendants' arguments regarding plaintiffs' counsel's failure to comply with Local Civil Rule 11.2 are well-founded. A second round of non-compliance with that Rule will result in sanctions upon filing of the appropriate motions." (<u>Al-Mazan</u>, Dickson Op., at 9). This Court strongly echoes that admonition regarding future filings before this Court.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted without prejudice for Counts 1-10 and 12-36, and is granted <u>with</u> prejudice for Count 11 as to Defendant TD Bank only. Plaintiffs may file an amended complaint within sixty (60) days of the issuance of this Opinion and accompanying Order. If Plaintiffs file an Amended Complaint, they must not only conform with the requirements of Rules 8(a) and 9(b), but also with Local Rule 11.2 to insure that there are not duplicative state actions pending. Failure to so file will result in

dismissal of Plaintiffs' Complaint <u>with</u> prejudice. An appropriate Order accompanies this

Opinion

DATED: January 27, 2012

Jose L. Linares
United States District Judge

27